## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:  HEI, Inc.

              Debtor.

Chapter 11 Bankruptcy
Case No.:  15-40009

**OBJECTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION TO DEBTOR'S MOTION FOR FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**

Wells Fargo Bank, National Association acting through its Wells Fargo Business Credit operating division ("Wells Fargo") hereby submits this objection to the Debtor's motion for a final order authorizing the use of cash collateral (D.I. 7, "Cash Collateral Motion") and demands adequate protection of its interest in the Debtor's assets.

Wells Fargo's primary objection is that the Debtor produced its revised Weekly Cashflow Forecast ("Revised Budget") at approximately 9:42 a.m. on January 16, 2015, the due date of Wells Fargo's objection.  The Debtor has not provided Wells Fargo with sufficient time to review the Revised Budget to determine whether it takes into account the significant developments in this case since January 4, 2015 ("Petition Date").  Based on Wells Fargo's preliminary review, it is apparent that the Revised Budget does not segregate and account for Wells Fargo's cash collateral separate and apart from the receipts and disbursements relating to recently authorized agreements between the Debtor and "Existing Customers" (as defined in the Cash Collateral Motion).  Without separately accounting for these receipts and disbursements, Wells Fargo cannot determine what if any cash collateral is required to operate the business.  For example, Wells Fargo cannot determine whether the Existing Customer premium payments of over $900,000.00 ("Premium Payments") are necessary for the operation of the business.

In addition, the Revised Budget reflects $384,150.00 in administrative expense disbursements during the weeks beginning February 2 and February 9, 2015 for professional fees and sale fees. It is in the best interest of the bankruptcy estate to satisfy Wells Fargo's claim first, prior to funding professional retainers and other post-petition administrative fees and expenses. Early payment of Wells Fargo's secured claim will avoid the accrual of additional post-petition default interest, fees, costs and attorneys' fees due Wells Fargo on account of its over-secured claim, and provide a larger distribution to unsecured creditors.

## BACKGROUND

1. Wells Fargo holds a first priority security interest in all or substantially all of the Debtor's assets. The security interest held by Wells Fargo extends to all cash collateral that the Debtor proposes to use under the Cash Collateral Motion. The Debtor does not dispute this, and Wells Fargo will file a proof of claim before the hearing that will constitute prima facie evidence of the validity and amount of its claim as of the Petition Date in the amount of $3,311,142.28 plus fees and costs. *See* Fed. R. Bankr. P. 3002(f).

2. In addition and pursuant to the loan documents and 11 U.S.C. § 506, Wells Fargo's default interest, fees, costs and attorneys' fees, as set forth in the loan documents, continue to accrue and will be satisfied with the proceeds from liquidation of Wells Fargo's collateral.

3. According to the Revised Budget, the Debtor estimates the value of its assets (excluding inventory) to be approximately $5.7 million for the week beginning January 12, 2015.

4. Since the inception of this case, Wells Fargo has worked with the Debtor to reach an agreeable order on the use of Wells Fargo's cash collateral, which culminated in the entry of

an order for use of cash collateral on an interim basis through the week beginning January 19, 2015.

5. Since then, and as a result of Wells Fargo's numerous requests, the Debtor produced its Revised Budget on January 16, 2015. Based on Wells Fargo's preliminary review, the Revised Budget fails to segregate and account for Wells Fargo's cash collateral separate and apart from the cash receipts and disbursements relating to the agreements with Existing Customers, which makes it impossible for Wells Fargo to determine whether its cash collateral is necessary for the operations of the business.

6. In addition, the Debtor has not yet filed its bankruptcy schedules or otherwise provided any indication regarding the amount of all claims against the bankruptcy estate, or whether the estate is solvent.

7. As it has throughout this case and notwithstanding the Debtor's failure to timely provide the Revised Budget and failure to provide the other information noted above, Wells Fargo will continue to negotiate with the parties to try to reach a mutually agreeable outcome. But, if such an agreement cannot be promptly reached, the Debtor must satisfy its evidentiary burden relating to use of cash collateral and adequate protection of Wells Fargo's interests.

**OBJECTION**

8. Pursuant to 11 U.S.C. § 363(c)(2), the Debtor "may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Accordingly, the Debtor may not use cash collateral after January 24, 2015 unless Wells Fargo consents or the Court approves of its use.

9. Furthermore, § 363(c)(4) requires that, "[e]xcept as provided in paragraph (2) of this subsection, the [Debtor] shall segregate and account for any cash collateral in the [Debtor's] possession, custody, or control." 11 U.S.C. § 363(c)(4).

10. On a contested motion to use cash collateral, a court must permit, prohibit, or condition such use as is necessary to provide adequate protection of the creditor's interest. *See* 11 U.S.C. § 363(e). When adequate protection is so required, § 361 of the Bankruptcy Code provides how the Debtor might be able to provide it. *See* 11 U.S.C. §361.

11. The debtor-in-possession bears the burden of proof on the issue of adequate protection. *See* 11 U.S.C. § 363(p).

12. Here, Wells Fargo does not consent to use of its cash collateral and the Court should not authorize its use based on the Revised Budget.

13. Specifically, the Budget does not separately account for Wells Fargo's cash collateral. In light of the court authorized agreements between the Debtor and Existing Customers, the Debtor must segregate and separately account for all cash receipts and disbursements relating to those recently authorized agreements. Without separately accounting for operations funded by Exiting Customers, it is impossible for Wells Fargo to determine the extent of the Debtor's use of cash collateral. It appears that the Existing Customers will fund most if not all of the Debtor's projected operating disbursements, and therefore, the Debtor's use of cash collateral should be minimal. However, Wells Fargo will not know with certainty until the Debtor provides a separate accounting for the receipts and disbursements relating to the Existing Customer agreements.

14. In addition, the Revised Budget proposes to use cash collateral to fund $384,150.00 of professional fees and sales fees during the weeks beginning February 2 and

4

February 9, 2015. Although Wells Fargo does not object to the amount of these retainers and sales fees, it does object to the timing of payment.

15. Since the Debtor has yet to file its schedules, and in light of the significant developments since the Petition Date (such as the Proposed § 363 Sale), it is difficult to determine the value of Wells Fargo's collateral. However, Wells Fargo currently believes that it is over-secured and the Debtor alleges an equity cushion of at least $2.4 million as of January 12, 2015. Given the Debtor's alleged equity cushion, it is clearly in the best interest of the bankruptcy estate to minimize post-petition default interest, fees, costs and attorneys' fees due Wells Fargo on account of its over-secured claim by satisfying Wells Fargo's claim, rather than using the cash collateral to fund payment of administrative expenses so early in the case. According to the Debtor, there is sufficient equity available for professional fees and sale fees after Wells Fargo's claim is satisfied in full. Moreover, it appears that all necessary operating expenses will be paid by Existing Customers, so there is no need to use Wells Fargo's cash collateral to fund the liquidation of the Debtor's remaining assets.

16. Under the circumstances the Court should deny Debtor's request for use of cash collateral. However, if the Court is inclined to enter a final order authorizing use of cash collateral, Wells Fargo is entitled to adequate protection under §§ 361 and 363(e).

17. Wells Fargo respectfully submits that it is entitled to the following as adequate protection for use of its cash collateral:

    a. Replacement liens, pursuant to §§ 361, 363 and 552 of the Bankruptcy Code, in the Debtor's postpetition assets, whether now owned or hereafter acquired or arising, of the same priority, dignity and effect as the prepetition liens of the Secured Lender, if any, on the prepetition property of the Debtor;

    b. Periodic adequate protection payments for the Debtor's use of cash collateral;

    c.    Payment of the net proceeds relating to the Proposed § 363 Sale;

    d.    Payment of all Premium Payments;

    e.    Compliance with all reporting and inspection requests made by Wells Fargo in accordance with Wells Fargo's rights under the loan documents.

18. Wells Fargo reserves its right to request additional and/or different adequate protection once it has an opportunity to fully review and analyze the Revised Budget.

19. In sum, the Debtor bears the burden of proof on the issue of adequate protection. *See* 11 U.S.C. § 363(p). To date, the Debtor has offered no evidence to help meet this burden, and Wells Fargo believes the Debtor cannot meet this burden.

20. Accordingly, if the parties cannot reach an agreement that would provide Wells Fargo's consent to use of cash collateral, the Court must deny the Cash Collateral Motion, or alternatively, grant Wells Fargo's request for adequate protection as outlined above.

Dated: January 16, 2015        LINDQUIST & VENNUM, L.L.P.

By: /s/ William P. Wassweiler
    Thomas E. Hoffman (#150125)
    William P. Wassweiler (#232348)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 371-3289
Fax: (612) 371-3207

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In Re: HEI, Inc.

Chapter 11 Bankruptcy
Case No.: 15-40009

Debtor.

**CERTIFICATE OF SERVICE**

Carmel Ann Funk, of the City of St. Paul, County of Ramsey, State of Minnesota, states that on January 16, 2015, she served the following document:

1. Objection of Wells Fargo Bank, National Association to Debtor's Motion for Final Order Authorizing Use of Cash Collateral

electronically by Notice of Electronic Filing upon the following parties who have requested service in these cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota:

The following is the list of **parties** who are currently on the list to receive email notice/service for this case:

- Phillip J Ashfield    phillip.ashfield@stinsonleonard.com, laura.schumm@stinsonleonard.com
- James L. Baillie    jbaillie@fredlaw.com, landerson@fredlaw.com;sstallings@fredlaw.com;jchristensen@fredlaw.com
- Phillip Bohl    phillip.bohl@gpmlaw.com, leesa.norton@gpmlaw.com
- James C. Brand    jbrand@fredlaw.com, wmunt@fredlaw.com;jchristensen@fredlaw.com
- Michael S. Dove    mdove@gislason.com, kgleisner@gislason.com;jburgau@gislason.com
- Michael R Fadlovich    michael.fadlovich@usdoj.gov
- Thomas Haines    Thaines@co.carver.mn.us, pmay@co.carver.mn.us
- Christopher J Harayda    cj.harayda@faegrebd.com, brenda.walz@faegrebd.com
- Thomas E. Hoffman    thoffman@lindquist.com, cfunk@lindquist.com
- Lorie A. Klein    lorie.klein@fmjlaw.com, sherri.debettignies@fmjlaw.com

7

- Connie A. Lahn    clahn@btlaw.com, tpaulson@btlaw.com;marobinson@btlaw.com
- Michael L Meyer    mlmeyer@ravichmeyer.com, mdhoward@ravichmeyer.com
- Hilary B. Mohr    hmohr@riddellwilliams.com, bborrus@riddellwilliams.com
- Sarah M Olson    solson@fredlaw.com, stimm@fredlaw.com;jchristensen@fredlaw.com;sstallings@fredlaw.com
- Timothy J. Prindiville    tim.prindiville@nilssonlaw.com
- David E. Runck    david.runck@fmjlaw.com
- US Trustee    ustpregion12.mn.ecf@usdoj.gov
- William P Wassweiler    wwassweiler@lindquist.com, cfunk@lindquist.com

The following parties are **not** on the list to receive email notice/service for this case and therefore require manual noticing/service via U.S. Mail.

KYRA E ANDRASSY
SMILEY WANG-ERKVALL
3200 PARK CENTER DRIVE
STE 250
COSTA MESA, CA 92626

PATRICIA CHEN
ROPES & GRAY LLP
PRUDENITAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199

DEREK CHEUNG
375 PARK AVENUE
SUITE 2607
NEW YORK, NY 10152

GEORGE R MESIRES
FAEGRE BAKER DANILES LLP
311 SOUTH WACKER DRIVE
STE 4300
CHICAGO, IL 60606

Chad Roberson
Honne II LP
375 Park Avenue
Suite 2607
New York, NY 10152

Chad Michael Roberson
2021 First Avenue
7C
New York, NY 10029

Teamvantage Molding LLC
20697 Fenway Ave N.
Forest Lake, MN 55025

Vergent Products
609 14th St.SW
Loveland, CO 80537

JAMES WILTON
ROPES & GRAY LLP
PRUDENITAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199

Watson-Marlow, Inc.
37 Uptton Technology Park
Wilmington, MA 01887


Date:  January 16, 2015                              /s/ Carmel Ann Funk