UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

HEI, Inc.,

Debtor.

BKY 15-40009

Chapter 11 Case

"""""""""""""""""""""""""""""""""""""""""""""""""""""QTFGT

This case is before the court on the debtor's Motion for Orders (I) Granting Expedited Relief; (II) Authorizing Debtor to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (III) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts; (IV) Approving Bidding Procedures; (V) Approving Break-Up Fee; (VI) Setting Further Hearing; and (VII) Approving Form and Manner of Notice ("Sale Motion").

For reasons stated orally and recorded in open court,

**IT IS FOUND AND DETERMINED THAT**:[1]

A.   The court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   The debtor has articulated good and sufficient reasons for approving the Sale Motion.

C.   The debtor has established cause for granting expedited relief.

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. 7052.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *01/21/2015*
Lori Vosejpka, Clerk, by LH

1

D. Due and proper notice of the Sale Motion was provided with respect to the relief granted in this order and no other or further notice need be provided.

E. The process for selecting HT Electronics, LLC as the stalking horse (the "Purchaser" or "Stalking Horse") was fair and appropriate under the circumstances and is in the best interests of the debtor's estate.

F. The debtor has demonstrated a compelling and sound business justification for authorizing the payment of a break-up fee (the "Break-Up Fee") on the terms set forth in the asset purchase agreement between the debtor and the Purchaser dated January 4, 2015 (the "APA").

G. The Break-Up Fee is fair and reasonable and provides a benefit to the debtor's estate and parties in interest in these cases.

H. The debtor's obligation to the Stalking Horse (under the conditions and as set forth in the APA) for the Break-Up Fee (a) is the result of arms' length negotiations among the parties that were not tainted by self-dealing or manipulation, (b) is reasonably tailored to encourage, rather than hamper, bidding for the debtor's assets, (c) is an actual and necessary cost and expense of preserving the debtor's assets, within the meaning of section 503(b) of the United States Bankruptcy Code, (d) is of substantial and commensurate benefit to the debtor's estate, (e) is reasonable and appropriate, in light of the size and nature of the transaction and the substantial efforts that have been and will be expended by the Stalking Horse and the benefits the Stalking Horse is providing to the debtor's estate, creditors and all parties in interest, (f) is necessary to ensure that the Stalking Horse will continue to pursue its proposed acquisition of the purchased assets, (g) is necessary to establish a bid standard and minimum bid for other bidders and attract additional bidders, and (h) correlates with a maximization of value to the debtor's estate. The Break-Up Fee and the

circumstances under which it becomes payable under the APA were material inducements for and conditions of, the Stalking Horse's entry into the APA.

    I.    The following bidding procedures (the "<u>Bidding Procedures</u>") are fair, reasonable and appropriate and represent the best method for maximizing the value of the debtor's assets:

    a.    Any person that wishes to bid at the auction described below (the "<u>Auction</u>") must no later than 3:00 p.m. on February 3, 2015, submit to the debtor, c/o of Alliance, 601 Carlson Parkway, Suite 110, Minneapolis, MN 55305 (Attn: Michael Knight, mknight@alliancemgmt.com), with a copy to Fredrikson & Byron, P.A., 200 S. Sixth Street, Suite 4000, Minneapolis, MN 55402 (Attn: James L. Baillie, jbaillie@fredlaw.com, (612) 492-7077 (fax) and Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, Minnesota 55402 (Attn: Philip T. Colton, pcolton@winthrop.com, (612) 604-6929 (fax), a package (collectively, a "<u>Bid Package</u>") that includes **all** of the following items:

    i.    A signed confidentiality agreement in the form provided by debtor.

    ii.    The identity of the party submitting the bid and any other party participating in such bid.

    iii.    A written acknowledgment that it agrees to all of the terms set forth in these Bidding Procedures.

    iv.    Written evidence that it has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and acceptance of the terms of sale set forth in these Bidding Procedures, or representation that no such authorization or approval is required.

    v.    Financial statements, bank statements, written evidence of a financing commitment, or other evidence, satisfactory to Alliance and debtor, each in their sole discretion, of the financial ability to close under its asset purchase agreement within the deadline described above.

    vi.    A signed asset purchase agreement in the form of the APA signed by the Stalking Horse "red-lined" to show any modifications required by the bidder. Such asset purchase agreement shall be without contingency for financing, further due diligence, or "material adverse change," and shall not contain a break-up fee or expense reimbursement. All modifications must be acceptable to debtor in consultation with Alliance and to any secured party if any modifications would result in less than full payment of such party's secured claims. Debtor in consultation with Alliance will use its sole discretion and reasonable judgment in valuing such changes and the value of any non-cash consideration to determine the total value of the bid. The new asset purchase agreement must also include a list of unexpired leases and executory contracts to be assumed by debtor and assigned to such bidder. Such bid for the same set of assets described in the APA must be irrevocable and on terms at least as favorable to debtor as those set forth in the APA and for a cash purchase price that is at least equal to the sum of (i) the purchase

        price set forth in the APA and (ii) (x) $152,500 with respect to the Victoria division assets set forth in the APA, (y) $128,000 with respect to the Tempe division assets set forth in the APA, and (z) $280,500 with respect to all of the purchased assets.

  vii.    A deposit ("Deposit") in the amount of 10% of the purchase price in the form of a cashier's check payable to the order of Winthrop & Weinstine, P.A., counsel for debtor, which will be returnable as set forth in Section I.

    b.    Debtor in consultation with Alliance and counsel will analyze each Bid Package based upon the criteria detailed above to determine which bids will qualify the bidders to participate in the auction ("Qualified Bid") based on the capability to close a transaction, and the bid's impact on all constituents of debtor, and the amount of the bid. A party who submits a Qualified Bid is a "Qualified Bidder". For purpose of the Auction, the Stalking Horse will be a Qualified Bidder. Alliance may, at any time, contact bidders to discuss or clarify terms and to indicate any terms, which may need to be modified in order to conform the bid to a Qualified Bid or to negotiate terms. Alliance may extend, at its discretion, the deadline for Qualified Bids, provided that any such extension shall not impair debtor's ability to close the sale of the Purchased Assets to Stalking Horse on the schedule set forth in the Stalking Horse's APA. Alliance shall provide a list of Qualified Bids and each corresponding Bid Package to any Committee of Unsecured Creditors (the "Committee"), the Stalking Horse, each Qualified Bidder, and counsel for each of them.

    c.    Qualified Bidders will convene for the Auction on February 5, 2015 at 10:00 a.m. at the offices of Fredrikson & Byron, P.A., Suite 4000, 200 South Sixth Street, Minneapolis, Minnesota, 55402 or at such other location selected by Alliance with written notice to each party that has submitted a Qualified Bid. If no Qualified Bid is received other than the Stalking Horse Bid, no Auction will take place. The Auction may be postponed by announcement by Alliance. Alliance may establish and announce rules for the conduct of the Auction and may modify those rules in its discretion. Alliance may separately auction any part of the property in any order in its sole discretion. Only Qualified Bidders may participate at the Auction. Only representatives of debtor, the United States Trustee, debtor's secured creditor, the Committee, Stalking Horse (if it chooses to participate in the Auction), and any other Qualified Bidders shall be entitled to attend the Auction.

    d.    As to any property included in the Stalking Horse Bid, bidding shall proceed by open auction with the Stalking Horse Bid and all Qualified Bidders offered the opportunity to increase their bids, after their initial bid, in increments of at least $50,000 with the right of the Stalking Horse to counterbid. The Stalking Horse may credit bid its Break-Up Fee of $34,000 with respect to the Victoria Division Assets, $26,000 with respect to the Tempe Division Assets, or $60,000 with respect to both. When such bidding has ceased, the two bids (for each group of assets, if applicable) that are deemed by the debtor, in consultation with Alliance, the highest and best bid will be announced at the close of the bidding. The highest and best bid is referred to herein as the "Prevailing Bid" and the maker of such bid the "Successful Bidder." The next highest and best bid will be the "Back-Up Bid" and the maker of the bid will be the "Back-Up Bidder." If the Stalking Horse Bid is not the Successful Bidder or the Back-Up Bidder which

ultimately becomes the successful buyer and the property is sold to another party, the Break-Up Fee shall be paid under the conditions and as described in the APA.

e. In determining which bid constitutes the Prevailing Bid or Prevailing Bids and the Back-Up Bid or Back-Up Bids, debtor will use its reasonable judgment and may consider, among other things: (i) the purchase price offered in the bid; (ii) the bidder's financial situation and wherewithal; (iii) the probability of prompt closing; (iv) the ability of such bidder to demonstrate adequate assurance of future performance for all unexpired leases and executory contracts to be assumed; and (v) the best interests of creditors and the estate. Debtor may also consider different combinations of bids and may withdraw assets from the bidding to become part of a plan of reorganization.

f. Debtor and Alliance will keep the Committee, the Stalking Horse and counsel for each of them informed concerning the sale process and the foregoing decision.

g. No additional bids may be submitted or considered after the auction.

h. **EACH BID – INCLUDING BIDS CONTAINED IN THE BID PACKAGE – SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER(S) AND THE BACK-UP BIDDER(S) FROM THE TIME THE BID IS SUBMITTED UNTIL THE EARLIER OF 48 HOURS AFTER THE SALE OF THE ASSETS HAS CLOSED OR THIRTY (30) DAYS AFTER THE APPROVAL HEARING, SUBJECT TO EXTENSION CONSISTENT WITH THE APA.**

i. On February 6, 2015 at 9:30 a.m. the Court will hold a hearing ("Sale Approval Hearing") at which the debtor will seek Bankruptcy Court approval of the Prevailing Bid(s) and of the Back-Up Bid(s). In the event that a Successful Bidder(s) cannot or refuses to consummate the sale, debtor will be permitted to close with the Back-Up Bidder(s) on the Back-Up Bid(s) without further order of the Court. Debtor's presentation to the Bankruptcy Court for approval of those particular bids does not constitute acceptance of any bids. Debtor has accepted a bid only when the Bankruptcy Court, following the Sale Approval Hearing, has approved the sale (the "Sale Order").

j. The closing (the "Closing") shall occur promptly after the Bankruptcy Court has approved the sale, subject to the right of debtor and the Successful Bidder, or the Back-Up Bidder as the case may be, to extend such date consistent with the applicable APA.

k. Each Deposit submitted by a Qualified Bidder other than the Successful Bidder or Back-Up Bidder will be returned promptly after the selection of the Successful Bidder and the Back-Up Bidder. The Deposit submitted by the Back-Up Bidder will be returned forty-eight (48) hours after closing of the sale of the assets to the Successful Bidder. Each Deposit submitted by a person who is determined not to be a Qualified Bidder will be returned promptly after such determination.

l. Notwithstanding anything to the contrary in any agreement between a Qualified Bidder and Debtor or any other entity, if such Qualified Bidder fails to consummate a transaction

5

approved pursuant to the Sale Order because of a breach or failure to perform on the part of such Qualified Bidder, such Qualified Bidder shall not be entitled to the return of its Deposit, such Deposit shall be deemed property of the debtor's estate, and such Deposit shall be retained by debtor's estate in partial satisfaction of any damages due to Debtor's estate as a result of such Qualified Bidder's failure to consummate the transaction (subject to the express terms of the APA with respect to Stalking Horse). Debtor and all other parties in interest retain any and all rights to recover damages in excess of the Deposit from such Qualified Bidder.

m. These Bid Procedures are subject to modification from time to time by Alliance, as circumstances may warrant. Debtor shall promptly notify parties in interest and prospective bidders of any such modifications. No bidder has any rights against debtor, its estate, Alliance, any of the debtor's other professionals by virtue of any modification of these Bid Procedures, or by virtue of having or not having its bid accepted by debtor or approved by the Bankruptcy Court.

n. The sale of the assets shall be on an "AS IS, WHERE IS, WITH ALL FAULTS" basis and without representation or warranties of any kind, nature or description by Debtor or its agents, except as provided in the APA accepted by debtor. All of the debtor's right, title and interest in and to the assets shall be sold free and clear of all liens, encumbrances, claims, interests to the full extent available under Bankruptcy Code section 363, with such liens, encumbrances, claims and interests to attach to the net proceeds of the sale.

o. Debtor may: (a) determine, in its business judgment and based on the criteria outlined herein, which bids are the highest and best bids for the assets and in the best interests of debtor's estate; and (b) except as to the Stalking Horse Bid, reject at any time before entry of an order by the Bankruptcy Court approving a Prevailing Bid (or Back-Up Bid), any bid that, in the debtor's discretion, is (i) inadequate or insufficient based on the criteria outlined herein, (ii) not in conformity with these procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of debtor and the debtor's estate; and (c) modify these procedures as set forth herein as required to best accomplish the sale or reorganization of the debtor. In taking such actions, debtor may consult with Alliance, any Committee, and its secured creditor.

J. The entry of this Order is in the best interests of the debtor and its estate, creditors and interest holders and all other parties in interest.

IT IS ORDERED:

1. The request for expedited relief is granted.

2. The Sale Motion is granted to the extent set forth in this order.

3. The debtor is authorized to enter into the APA, subject to the provisions of this order.

6

4. The transaction contemplated by the APA is designated as the Stalking Horse Bid under the Bidding Procedures.

5. All objections filed in response to the Sale Motion with respect to the relief granted in this order are resolved as set forth in this order and to the extent not resolved, are overruled.

6. The debtor is authorized to conduct the Auction for the sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances, with all such liens, claims, interests and encumbrances to attach to the sale proceeds in the same order, priority, and dignity as existed at the commencement of the case, subject to a further hearing and final court approval following the Auction.

7. The debtor is authorized to offer the assignment of unexpired leases and executory contracts and to determine cure amounts in connection with the transaction, subject to further hearing and final court approval of such assignment at the Sale Approval Hearing, all as provided in the Bidding Procedures.

8. The Bidding Procedures are approved.

9. The Notice of Cure Amount is approved and the debtor is authorized and directed to serve the Notice of Cure Amount in the manner and upon the parties specified in the Sale Motion.

10. The Sale Notice is approved and the debtor is authorized and directed to serve the Sale Notice in the manner and upon the parties specified in the Sale Motion and the Bidding Procedures.

11. Pursuant to sections 105, 363, 503 and 507 of the Bankruptcy Code, the debtor is authorized, empowered, and directed to pay an amount equal to the Break-Up Fee as applicable, to the Stalking Horse in accordance with the terms of the APA, the Bidding Procedures, and without

further order of this court. The dollar amount of the Break-Up Fee and the circumstances under which the Break-Up Fee is payable, as set forth in Section 10 of the APA, are approved.

12. To the extent payable under the APA, the debtor's obligation to pay the Break-Up Fee shall survive termination of the APA and shall be an allowed administrative expense under section 503(b) of the Bankruptcy Code without further order of this court.

13. This court will hold the Sale Approval Hearing on or after 9:30 a.m. on February 6, 2015 to consider final approval of the APA. The Sale Approval Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this court or on this court's calendar on the date scheduled for the hearing.

14. Objections, if any, to the Sale Motion, including any cure amount or to the assumption and assignment of any contract or lease, must be served on the Stalking Horse and all others entitled to notice and filed in accordance with local rule 9006-1(c), 9013-2, and 9013-3 and the Bidding Procedures.

15. The debtor is authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established under this order and the Bidding Procedures.

16. This order and the Bidding Procedures shall be binding upon and inure to the benefit of the Stalking Horse, the Successful Bidder, their affiliates, successors and assigns, the debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the debtor's estate, whether in this case or subsequent bankruptcy case or upon dismissal of this case, and the debtor's creditors.

17. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this order is effective immediately.

Dated: *January 21, 2015*     /e/ Kathleen H. Sanberg
                              Kathleen H. Sanberg
                              United States Bankruptcy Judge