UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

HEI, Inc.,                                                                               Case No. 15-40009

                Debtor.                                                                   Chapter 11 Case

**ORDER (I) AUTHORIZING DEBTOR, TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (III) GRANTING OTHER AND FURTHER RELIEF (TEMPE ASSETS)**

This case came before the court on the Debtor's Motion for Orders (I) Granting Expedited Relief; (II) Authorizing Debtor to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (III) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts; (IV) Approving Bidding Procedures; (V) Approving Break-Up Fee; (VI) Setting Further Hearing; and (VII) Approving Form and Manner of Notice ("Sale Motion").

For reasons stated orally and recorded in open court,

**IT IS FOUND THAT**:[1]

A.     This court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1070-1.

B.     Venue of this case (the "Chapter 11 Case") in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C.     Determination of the Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). The statutory predicates for the relief requested herein are sections 105,

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Bankruptcy Rule 7052.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 02/06/2015
Lori Vosejpka, Clerk, by LH

363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014.

D.  This order (the "Tempe Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the court expressly finds that there is no just reason for delay in the implementation of this Tempe Sale Order, and expressly directs entry of judgment as set forth herein, and this Tempe Sale Order shall take effect immediately upon its entry.

E.  On January 21, 2015, the court entered an order (the "Sale Procedures Order").

F.  Pursuant to the Sale Procedures Order, HT Electronics, LLC (the "Stalking Horse") was designated as the stalking horse bidder, and a transaction contemplated by an Asset Purchase Agreement among HEI, Inc. and HT Electronics, LLC dated January 4, 2015 was designated as the stalking horse bid.  The stalking horse bid contemplated the purchase of certain assets primarily located at or related to the Debtor's Victoria, Minnesota facility (the "Victoria Assets"), as well as certain assets primarily located at or related to the Debtor's Tempe, Arizona facility (the "Tempe Assets").

G.  The Sale Procedures Order approved the payment of a break-up fee (the "Break-Up Fee") to the Stalking Horse under certain circumstances.

H.  Pursuant to the Sale Procedures Order, an auction (the "Auction") was set for February 5, 2015, and a hearing was set for February 6, 2015 (the "Sale Approval Hearing") to consider final approval of the sale to the bidder who prevailed at the Auction.

I. On January 5, 2015, the Debtor filed the Sale Motion and served copies of the Sale Motion in compliance with local rule 9013-3(a)(2). The Debtor subsequently served copies of a Notice of Sale and Bidding Procedures (the "Sale Notice") in compliance with the Sale Procedures Order as demonstrated by certificates of service filed as docket numbers 93, 119, 135, 136, and 137.

J. The Debtor served copies of the Notice of Cure Amount in compliance with the Sale Procedures Order as demonstrated by the certificate of service filed as part of docket number 101.

K. Based upon the foregoing and the certificates of service filed with the court, due, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Approval Hearing, the sale of the relevant assets, and the proposed assumption and assignment of the assumed contracts has been provided in accordance with sections 102(1), 363(b) and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 2002-4, 6004-1, 9013-2 and 9013-3, and in compliance with the Sale Procedures Order, and no other or further notice of the sale approved in this Tempe Sale Order is required or necessary.

L. The Notice of Cure Amount provided that parties to the assumed contracts had until 5 days before the Sale Approval Hearing (the "Contract Objection Deadline") to file an objection to (i) the proposed assumption and assignment of such contracts and/or (ii) the proposed cure amount as set forth in the Notice of Cure Amount (a "Contract Objection"). Adequate notice and opportunity to be heard was provided to parties to assumed contracts to be assumed and assigned pursuant to this Tempe Sale Order. Further, such parties received adequate notice and an opportunity to object to the cure amount.

M.	As further described in the Debtor's auction report filed on February 6, 2015 (the "Auction Report"), at the Auction, the Victoria Assets were auctioned separately from the Tempe Assets.  When the bidding on the Tempe Assets concluded, the Debtor, in consultation with its advisors (including its financial advisor, BGA Management, LLC d/b/a Alliance Management ("Alliance")), determined that the highest and best bid for the Tempe Assets was submitted by Cochlear Manufacturing Corporation ("Cochlear" or the "Purchaser") pursuant to an Asset Purchase Agreement between the Debtor and the Purchaser dated February 5, 2015 (the "Tempe APA"), attached as Exhibit B to the Auction Report.

N.	The Debtor, in consultation with its advisors, including Alliance, concluded that the second highest and best bid for the Tempe Assets (the "Back-Up Tempe Bid") was submitted by Molex Incorporated.

O.	In accordance with the Sale Procedures Order and the bidding procedures contained therein, the Purchaser was deemed a qualified bidder for the Tempe Assets (as further described in the Tempe APA, the "Purchased Assets"), its bid was deemed a qualified bid, and it participated in the Auction.

P.	The Debtor's determination that the Purchaser's bid based upon the Tempe APA constitutes the highest and best offer for the Purchased Assets in accordance with the bidding procedures constitutes a valid and sound exercise of the Debtor's business judgment.  The Purchaser's bid represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this Chapter 11 Case.

Q.	The Debtor has demonstrated compelling circumstances, good, sufficient and sound business purposes for the sale of the Purchased Assets pursuant to section 363(b) of the

Bankruptcy Code and that the sale of the Purchased Assets pursuant to the Tempe APA constitutes a reasonable and sound exercise of the Debtor's business judgment.

R. Upon entry of this Tempe Sale Order, the Debtor (i) has full corporate or other power to execute, deliver and perform its obligations under the Tempe APA and all other documents contemplated thereby or entered into in connection therewith, and the sale of the Purchased Assets by the Debtor has been duly and validly authorized by all necessary corporate or similar action, and (ii) has taken all action necessary to authorize and approve the Tempe APA and such other documents contemplated thereby and the consummation by them of the transactions contemplated thereby or entered into connection therewith.

S. The Debtor is authorized to sell and transfer the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests (as that term is defined in paragraph 8 hereof) pursuant to the Tempe APA because it has satisfied the requirements of section 363(f) of the Bankruptcy Code.

T. Those holders of Liens, Claims, Encumbrances and Interests against the Debtor, its estate or in respect of any of the Purchased Assets who did not object, or who withdrew their objections, to the sale or the Sale Motion are deemed to have consented to the sale pursuant to section 363(f)(2) of the Bankruptcy Code.

U. Except for the liabilities expressly assumed by the Purchaser pursuant to the Tempe APA, the transfer of the Purchased Assets to the Purchaser, and assumption and assignment to the Purchaser of the Assumed Contracts (defined below), will not subject the Purchaser to any Lien, Claim, Encumbrance and Interest whatsoever with respect to the operation of the Debtor's business prior to the closing date to the maximum extent provided by section 363(f) of the Bankruptcy Code.

V. The Tempe APA was negotiated, proposed and entered into by the parties in good faith, from arms' length bargaining positions and without collusion within the meaning of section 363(m) and (n) of the Bankruptcy Code. As a result of the foregoing, Debtor and Purchaser are entitled to the protections of section 363(m) and (n) of the Bankruptcy Code with respect to all aspects of the Tempe APA. The Debtor has followed in good faith the procedures for notice and sale of the Purchased Assets as set forth in the Sale Procedures Order. Purchaser is not an "insider" of Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Moreover, none of Purchaser, Debtor, or any other party (including Alliance) has engaged in any conduct that would cause or permit the Tempe APA to be avoided under section 363(n) of the Bankruptcy Code.

W. The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the executory contracts and unexpired leases in the chart below (the "Assumed Contracts"), if designated pursuant to the terms of the Tempe APA, in connection with the consummation of the sale of the Purchased Assets, and the assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its estate, its creditors and its equity holders, if designated pursuant to the terms of the Tempe APA. All amounts which are required to be paid in connection with the assumption and assignment of the Assumed Contracts pursuant to the Tempe APA, including under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code, (the "Cure Amounts") are as follows:

| Counterparty | Contract Name | Description | Cure Amount |
|---|---|---|---|
| Lease Finance Group | Tempe: Lease Agreement Schedule No. 2 dated 3/22/2012 [Lease No. 4866-2] | Orbotech Ultra DSV-V Automated Optical Inspection (AOI), s/n PI113074 | $0.00 |
| m2 Lease Funds | Tempe: Lease dated 10/28/2011 | Plasma MKII System, Serial #09211 | $1,893.59 |
| Orbotech, Inc. | Agreement dated 11/12/2013 [Agreement No. #ORB-2014-197] | Technical application support | $47,500.00 |
| Orbotech, Inc. | Tempe: LDI (2) and AOI (2) Equipment Service Agreement - Contract # 203186/11 | | $0.00 |
| Orbotech, Inc. | Tempe: InPlan Software Seat - Contract # 203917/4 | N/A | $3,800.00 |
| 600 Rockford LLC | Tempe: Lease dated 8/1/1992; Amendment No. 2 dated 6/7/2010 | Tempe Arizona #1 facility | $29,000.00 |

X. The Cure Amounts, if any, shall be paid by the Purchaser, subject to the terms and conditions of the Tempe APA, without any adjustment to the purchase price. Counterparties to the Assumed Contracts have received adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code. Accordingly, the Debtor has satisfied the requirements of sections 365(b)(1) and section 365(f)(2) of the Bankruptcy Code with respect to the Assumed Contracts.

Y. Upon the closing, Purchaser shall be deemed to have assumed only the liabilities expressly assumed pursuant to the Tempe APA (the "Assumed Liabilities"). Except with respect to the Assumed Liabilities, the closing and the consummation of the transactions contemplated by the Tempe APA shall not, by reason of such closing and transactions, subject Purchaser to any liability whatsoever for claims against Debtor with respect to the operation of the business of Debtor before the closing date.

Z. In the absence of a stay pending appeal, Purchaser will be acting in good faith pursuant to Bankruptcy Code § 363(m) in closing the transactions contemplated by the Tempe APA at any time on or after the entry of this Tempe Sale Order. The Court being satisfied that (i) no objections have been raised of a nature that should prevent the immediate entry of this Tempe Sale Order, (ii) the Tempe APA contains deadlines with which the parties must comply, and (iii) the transfer of the Purchased Assets without delay beyond a time selected by the parties will help preserve the value of the Purchased Assets for Purchaser and Debtor's estate, the Court finds cause to lift the stays provided in Bankruptcy Rules 6004(h) and 6006(d).

**IT IS ORDERED:**

**General Provisions**

1. The Sale Motion is granted to the extent provided in this order, and all references to "Purchaser" in this order shall apply to Cochlear.

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein, which are not otherwise provided for by this Tempe Sale Order, are overruled.

3. Notice of the Sale Approval Hearing was fair and equitable under the circumstances and complied in all respects with the Sale Procedures Order and with sections 102(1), 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 2002-4, 6004-1, 9013-2 and 9013-3.

**Approval of the Tempe APA**

4. Each and every term of the Tempe APA and all other ancillary documents is approved.

5. The sale of the Purchased Assets to Purchaser pursuant to the Tempe APA is authorized under sections 363 and 365 of the Bankruptcy Code and the entry of the Debtor into the Tempe APA is approved.

6. To the extent the Debtor is required to pay the Break-Up Fee to the Stalking Horse in connection with this sale, the Debtor is authorized to pay the Break-Up Fee, and the Break-Up Fee shall be paid from the sale proceeds and in accordance with the provisions of the Sale Procedures Order.

7. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to execute and to fully perform under the Tempe APA, together with all additional instruments and documents that may be reasonably necessary, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of transferring any or all of the Purchased Assets and perform the obligations of the Debtor under the Tempe APA, including effectuating amendments to the Tempe APA.

8. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Tempe APA or any other sale-related document.

**Transfer of the Purchased Assets**

9. Except to the extent set forth in the Tempe APA, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser in accordance with the Tempe APA and effective as of the closing, such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title to the Purchased Assets, free and clear of all Liens (as defined in the section 101(37) of the Bankruptcy Code), Claims (as defined in section 101(5) of the Bankruptcy Code),

encumbrances, and other interests to the maximum extent of section 363(f) of the Bankruptcy Code (the foregoing collectively referred to as "Liens, Claims, Encumbrances and Interests" herein, *provided, however*, that throughout this Tempe Sale Order the term "Liens, Claims, Encumbrances and Interests" shall not include Assumed Liabilities, except as otherwise set forth in the Tempe APA). All Liens, Claims, Encumbrances and Interests that are released, terminated and discharged as to the Purchased Assets shall attach to the sale proceeds with the same order, priority, dignity and effect which they now have as against the Debtor, its estate or the Purchased Assets. The sole and exclusive right and remedy available to purported creditors, equity holders, including, without limitation, equity holders of the Debtor, holders of any other Liens, Claims, Encumbrances and Interests, and parties in interest shall be a right to assert Liens, Claims, Encumbrances and Interests against the Debtor's estate.

10. All persons and entities are permanently barred from commencing or continuing any action or other proceeding of any kind against the Purchased Assets or the Purchaser and its successors or assigns with respect to any Liens, Claims, Encumbrances and Interests arising prior to the closing date. The sole and exclusive right and remedy available to any party who asserts any Liens, Claims, Encumbrances and Interests in any way related to the Purchased Assets arising prior to the date of closing shall be a right to assert such Liens, Claims, Encumbrances and Interests against the Debtor's estate. If the proposed sale fails to close for any reason, then Liens, Claims, Encumbrances and Interests shall continue against the Purchased Assets unaffected by this Tempe Sale Order. As of the closing, the Purchaser shall have any and all rights, claims, defenses and offsets held by Debtor and the estate with respect to Assumed Liabilities.

11. Except for the Assumed Liabilities as set forth in the Tempe APA, the transfer of the Purchased Assets pursuant to this Tempe Sale Order shall not subject the Purchaser to any liability with respect to any obligations incurred in connection with, or in any way related to the Purchased Assets, prior to the date of closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

12. Notwithstanding the foregoing, this Tempe Sale Order shall not affect any lien of Maricopa County relating to personal property taxes for any tax period ending after the closing date.

13. The provisions of this Tempe Sale Order authorizing the sale of the Purchased Assets shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Tempe Sale Order. Notwithstanding the foregoing, the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Tempe Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Encumbrances and Interests in the Purchased Assets.

14. Except as otherwise expressly provided in the Tempe APA, all persons or entities, presently or on or after the closing date, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the closing date or at such time thereafter as the Purchaser may request.

**Assumption and Assignment to Purchaser of Assumed Contracts**

15.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the transaction contemplated by the Tempe APA, the Debtor's assumption and assignment to the Purchaser of the Assumed Contracts is approved.

16.     The Debtor is authorized to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser; *provided, however,* that prior to the closing, the Purchaser may identify any Assumed Contract as one that the Purchaser no longer desires to have assigned to it and such contract shall not be assumed and assigned.

17.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract that prohibits, restricts, or condition such assignment or transfer.

18.     The Purchaser is able to provide adequate assurance of future performance under the relevant Assumed Contracts with the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**Additional Provisions**

19.     The transaction contemplated by the Tempe APA is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

20.     The consideration provided by the Purchaser for the assets purchased under the Tempe APA (i) shall be deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the other laws of the United States, any state, territory, possession or the District of Columbia and (ii) is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.  All entities presently or on the closing date that may be in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to Purchaser on or before the closing date.

21. Except as otherwise specifically provided for in this Tempe Sale Order and in the Tempe APA, the Purchaser and its employees, officers, directors, advisors, affiliates, owners, successors and assigns shall have no liability or responsibility for any liability or other obligation of the Debtor or the estate arising under or related to the Purchased Assets or other assets, operations, activities, or businesses of Debtor, including but not limited to under any theory of successor or vicarious liability, antitrust, environmental or labor law, *de facto* merger or substantial continuity.

22. This Court retains exclusive jurisdiction to (i) interpret, enforce and implement the terms and provisions of the Tempe APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Purchased Assets to the Purchaser, (iii) resolve any disputes arising under or related to the Tempe APA and related agreements, except as otherwise provided therein, (iv) enjoin and adjudicate the assertion of any Liens, Claims, Encumbrances and Interests against the Purchaser or in respect of the Purchased Assets, (v) interpret, implement and enforce the provisions of this Tempe Sale Order, and (vi) resolve any and all disputes relating to any permitted liens on the Purchased Assets that are transferred to the Purchaser in accordance with the Tempe APA.

23. As of the closing, all agreements entered prior to the date hereof shall be deemed amended or modified solely to the extent required to permit the consummation of the transactions contemplated by this Tempe Sale Order and the Tempe APA.

24. The Debtor is authorized to disburse some or all of the net sale proceeds to: (i) Maricopa County for application against amounts owed for personal property taxes related to the Purchased Assets; and (ii) Wells Fargo Bank, National Association (the "Lender") for application against the Lender's secured claim against the Debtor.

25. The Tempe APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the court, provided that any such modification, amendment or supplement is not materially less favorable to the Debtor. In the event a modification is materially less favorable to the Debtor, the Debtor shall file and serve a notice of such modification. If no party-in-interest filed a written objection with the court within five (5) business days, such modification shall be deemed approved without further order of the court, but the court may enter any such further order as may be necessary.

26. Notwithstanding Fed. R. Bankr. P. 6004(h) and 6006(d), this Tempe Sale Order shall take effect immediately upon entry, and in the absence of any entity obtaining a stay pending appeal, Debtor and Purchaser are free to close under the Tempe APA at any time.

27. To the extent that this Tempe Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the Chapter 11 Case, the terms of this Tempe Sale Order shall govern. The failure to include any particular provision of the Tempe APA or any related agreements in this Tempe Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor, and the Purchaser that the

Tempe APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Tempe Sale Order prior to the closing.

28. In the event that the sale of the Purchased Assets to Purchaser fails to close, the Debtor may file an application seeking entry of a supplemental sale order approving the sale of the Purchased Assets to Molex Incorporated pursuant to the Back-Up Tempe Bid. Any such application shall be on notice to counsel for the Official Committee of Unsecured Creditors, the Lender, and the United States Trustee, and be accompanied by the proposed asset purchase agreement for the Back-Up Tempe Bid, and any proposed supplemental sale approval order. This Court may then issue such a supplemental sale approval order if no objection is received within five business days.

29. Notwithstanding anything in this Sale Order to the contrary, the Purchased Assets shall not include (i) any software (including any object code, electronic impulses, programs or routines and all written or printed data, programs, or documentation essential to the operation of the equipment for which it was designed) ("Orbotech Software"), proprietary rights, or intellectual property ("Orbotech Property") owned or controlled by Orbotech, Inc. or any of its affiliates (collectively, "Orbotech"), or (ii) any license or similar rights to use the Orbotech Property. Moreover, notwithstanding anything in this Sale Order to the contrary, as a condition of the Debtor's authority under this Sale Order to sell any property of the Debtor that currently contains Orbotech Software ("Orbotech Equipment") or to assume and assign any unexpired lease of any Orbotech Equipment, the Debtor and the Purchaser shall, except to the extent otherwise notified in writing by Orbotech, permit Orbotech to remove any Orbotech Software from such Orbotech Equipment on or before February 13, 2015 or such later date as Orbotech

determines in its sole discretion. In the interim, Purchaser and Orbotech shall continue their good faith negotiations concerning the Orbotech Software.

Dated:  February 6, 2015

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge

52486531