UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

HEI, Inc.,                                                    BKY Case No.  15-40009

                        Debtor.                                      Chapter 11 Case

---

**DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION**
**DATED JUNE 3, 2015**

---

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS ................................................................................................. 1

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ................................... 5

ARTICLE III TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS .............. 6

    3.1    Allowed Administrative Expense Claims ................................................. 6

        3.1.1    Postpetition Operating Expenses ............................................. 6

        3.1.2    Twenty-Day Claims ................................................................. 6

        3.1.3    Professional Fees and Expenses ............................................... 7

        3.1.4    Taxes ......................................................................................... 7

        3.1.5    Reclamation Claims ................................................................. 7

        3.1.6    Claims Arising Under Assumed Executory Contracts or Unexpired
                Leases ....................................................................................... 7

    3.2    Statutory Fees and Court Costs ............................................................... 7

    3.3    Unsecured Priority Claims ...................................................................... 8

        3.3.1    Priority Tax Claims ................................................................. 8

        3.3.2    Employee Priority Claims and Other Claims Under
                Section 507(a)(4) or (5) of the Bankruptcy Code ................... 8

        3.3.3    Other Priority Claims .............................................................. 8

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ......................... 9

    4.1    Class 1 – Avoidable Secured Claim – Fischer Technology, Inc. .......................... 9

    4.2    Class 2 – Secured Tax Claims .................................................................. 9

    4.3    Class 3 – Other Secured Claims ............................................................... 9

    4.4    Class 4 – General Unsecured Claims ...................................................... 10

    4.5    Class 5  – Preferred Interests ................................................................... 10

    4.6    Class 6 – Non-Preferred Equity Interests ................................................ 10

    4.7    Special Provisions Relating to Creditors' Rights of Setoff ..................... 10

ARTICLE V MEANS OF EXECUTION OF THE PLAN ................................................. 11

    5.1    Liquidating Fund and Liquidating Agent .............................................. 11

        5.1.1    Liquidating Fund ..................................................................... 11

        5.1.2    Liquidating Agent ................................................................... 11

        5.1.3    Powers and Duties of the Liquidating Agent .......................... 11

        5.1.4    Compensation and Retention of Professionals ....................... 13

        5.1.5    Removal of the Liquidating Agent. ......................................... 13

    5.2    Oversight Committee .............................................................................. 13

    5.3    Liability and Indemnification of Liquidating Agent and Oversight
        Committee Members ............................................................................... 14

    5.4    Effectuating Documents; Further Transactions; Exemption from Certain
        Transfer Taxes ....................................................................................... 14

    5.5    Cancellation of Instruments and Stock ................................................... 15

ARTICLE VI DISTRIBUTIONS AND CLAIMS ADMINISTRATION.................................. 15

6.1    Distributions.................................................................................. 15
6.2    Method of Payment ....................................................................... 15
6.3    Claims Administration Responsibility ........................................... 15
    6.3.1    Reservation of Rights to Object to Claims ............................ 15
    6.3.2    Filing of Objections .............................................................. 16
    6.3.3    Determination of Claims ........................................................ 16
6.4    Procedures for Treating and Resolving Contested Claims ................ 16
    6.4.1    No Distributions Pending Allowance .................................... 16
    6.4.2    Claim Estimation .................................................................. 16
    6.4.3    No Distribution if Cause of Action Asserted ......................... 17
    6.4.4    Reserve Account for Contested Claims .................................. 17
    6.4.5    Payment Upon Allowance and Disallowance of Contested Claims ....... 17
6.5    Record Date ................................................................................... 17
6.6    Limitations on Amounts to Be Distributed to Holders of Allowed Insured
        Claims ........................................................................................... 17
6.7    De Minimis Distributions .............................................................. 18
6.8    Unclaimed Payments ..................................................................... 18
6.9    Time Bar to Check Payments ........................................................ 18
6.10   Setoffs .......................................................................................... 18

ARTICLE VII RETENTION AND ENFORCEMENT OF CLAIMS OR INTERESTS
        BELONGING TO THE DEBTOR OR THE ESTATE ............................. 19

7.1    Preservation of Causes of Action and Avoidance Claims .................. 19

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................ 19

8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases .......... 19
8.2    Cure of Defaults ............................................................................ 19
8.3    Bar Dates for Rejection Damage Claims ........................................ 20

ARTICLE IX CONFIRMATION OF THE PLAN ................................................... 20

9.1    Conditions Precedent to Confirmation............................................. 20
9.2    Conditions Precedent to the Effective Date ..................................... 20
9.3    Waiver of Conditions to Confirmation or Effective Date.................... 21
9.4    Cramdown ..................................................................................... 21
9.5    Effect of Confirmation of the Plan.................................................. 21
    9.5.1    Title to and Vesting of Assets ............................................... 21
    9.5.2    Corporate Action ................................................................... 21
    9.5.3    Injunction Against Interference with the Plan ....................... 21
    9.5.4    No Discharge ........................................................................ 22
    9.5.5    Exculpation ........................................................................... 22

ARTICLE X EVENTS OF DEFAULT ................................................................ 22

ARTICLE XI RETENTION OF JURISDICTION ........................................................................ 22

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................................. 24

    12.1    Modification of the Plan ..................................................................................... 24

    12.2    Revocation of the Plan ....................................................................................... 24

    12.3    Dissolution of the Committee ............................................................................ 25

    12.4    Severability of Plan Provisions .......................................................................... 25

    12.5    Corporate Documents ......................................................................................... 25

    12.6    Regulated Rates .................................................................................................. 25

    12.7    Successors and Assigns ...................................................................................... 25

    12.8    Governing Law ................................................................................................... 25

    12.9    Construction ....................................................................................................... 25

EXHIBITS

5.2    Oversight Committee By-Laws

7.1    Preserved Causes of Action; Avoidance Claims

8.1    Additional Assumed Contracts and Leases

## INTRODUCTION

Debtor HEI, Inc. (the "Debtor") proposes the following Plan of Liquidation (the "Plan") for the purpose of completing the liquidation of the Debtor's assets, resolving the outstanding claims against in the Debtor's bankruptcy estate, and making distributions to holders of claims. Reference is made to the Disclosure Statement in support of the Debtor's Chapter 11 Plan of Liquidation dated June 3, 2015, for a discussion of the Debtor's history, business and operations, and property; a summary and analysis of this Plan; risk factors related to this Plan; and certain other matters related to the Debtor's Chapter 11 Case.  This Plan follows the closing of sales of most of the Debtor's operating assets.  This Plan contemplates the selection of a liquidating agent ("Liquidating Agent") and an oversight committee ("Oversight Committee") to complete the liquidation by sale of the Debtor's real property (later defined as the "Victoria Property" in this Plan) and any other remaining unsold assets, collect any collectible but previously uncollected accounts receivable, pursue any viable avoidance actions, and distribute the proceeds to creditors.  Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE I
## DEFINITIONS

1.1     "Additional Assumed Agreements" has the meaning given in Section 8.1 of this Plan.

1.2     "Administrative Expense Claims" means claims described in Section 3.1 of this Plan.

1.3     "Allowed" means with respect to any claim: (a) a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor, the Liquidating Agent, or any other party-in-interest have not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; (c) a claim that is determined by the Debtor or the Liquidating Agent to be allowed; (d) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a claim relating to a rejected executory contract or unexpired lease that is not a Contested Claim or has been allowed by a Final Order, only if a proof of claim has been timely filed; or (f) a claim as to which a proof of claim has been timely filed and as to which the Debtor or any party-in-interest has not filed an objection; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

1.4     "Avoidance Claim" means any claim, cause of action, or rights to property of the Debtor or the bankruptcy estate under sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.5     "Ballot" means the form of ballot to be used to vote on this Plan.

1.6     "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

1.7     "Bankruptcy Rule" or "Rule" means a Federal Rule of Bankruptcy Procedure.

1.8     "BWI" means customer Biosense Webster, Inc.

1.9     "Causes of Action" means any and all actions, proceedings, causes of action (including, without limitation, any causes of action of a debtor or debtor in possession or the bankruptcy estate(s) under Chapter 5 of the Bankruptcy Code such as the Avoidance Claims), liabilities, obligations, suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, rights to object to claims, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether asserted or assertable directly or derivatively, in law, equity, or otherwise, and all rights thereunder or attendant thereto that belong to the debtor or the bankruptcy estate.

1.10    "Chapter 11 Case" means Debtor's pending case under Title 11 of the United States Code, enumerated in the caption at the top of this Plan.

1.11    "Cochlear Sale" means the sale of certain assets primarily located at or related to the Debtor's Tempe facility, sold to Cochlear Manufacturing Corporation, as approved by the Cochlear Sale Order.

1.12    "Cochlear Sale Order" means the order entered on February 6, 2015, as docket no. 146, approving the Cochlear Sale.

1.13    "Committee" means the official committee of unsecured creditors appointed in this Chapter 11 Case.

1.14    "Confirmation Date" means the date on which the Confirmation Order is entered.

1.15    "Confirmation Order" means the order confirming this Plan.

1.16    "Contested Claim" means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor, the Liquidating Agent, or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a Creditor against which the Liquidating Agent has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor's insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

1.17    "Court" means the United States Bankruptcy Court for the District of Minnesota, or any other court having competent jurisdiction to issue an order in this case.

1.18    "Creditor" means a holder of a claim entitled to distributions under the Plan.

1.19   "Cure Amount Claim" means a claim based upon the Debtor's monetary defaults under an executory contract or unexpired lease that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code.

1.20   "Debtor" has the meaning set forth in the Introduction to this Plan.

1.21   "Disclosure Statement" means the Disclosure Statement for this Plan, as may be further revised, modified, or amended.

1.22   "Effective Date" means the first day following the day on which the conditions of Section 9.2 have been satisfied or such earlier date as is established by a waiver by the Debtor under Section 9.3.

1.23   "Employee Priority Claims" means claims held by employees that are entitled to priority under section 507(a)(4) or (5) of the Bankruptcy Code.

1.24   "Estate Assets" means all of the Debtor's right, title, and interest in and to property of whatever type or nature as provided in section 541 of the Bankruptcy Code, including Avoidance Claims and Causes of Action, that are not expressly abandoned or otherwise transferred by the Debtor under this Plan.

1.25   "Exculpated Parties" means the Debtor, the Committee, the Liquidating Agent, and the Oversight Committee as well as their shareholders, directors, officers, agents, employees, attorneys, accountants, financial advisors, consultants, and representatives (solely in their capacities as such).

1.26   "Filing Date" means January 4, 2015.

1.27   "Final Determination" means a determination under non-bankruptcy law that has not been stayed, reversed, or amended and to which (a) the time to appeal or seek review or rehearing has expired, and (b) no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.28   "Final Order" means an order of the Court for which the time to appeal from such order has expired, and which has not been reversed, stayed, modified, or amended.

1.29   "General Unsecured Claims" means the Class 4 claims described in Section 4.4 of this Plan, which are not Unclassified Priority Claims.

1.30   "Insured Claim" means that portion of any claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date: (a) as to which any insurer whose insurance contract(s) premiums were paid by the Debtor is obligated pursuant to the terms, conditions, limitations, and exclusions of such insurance contract(s) to pay any judgment, loss, damages, settlement, or contractual obligation with respect to the Debtor; or (b) that any insurer whose insurance contract(s) premiums were paid by the Debtor otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable insurance contract(s).

1.31   "Liquidating Agent" means the person selected by the Committee, with the consent of the Debtor, and approved by the Court to be the successor to the assets of the

bankruptcy estate on behalf of the Creditors and to undertake and perform the powers and duties of the Liquidating Agent described in Article V of the Plan. The Liquidating Agent shall assume his or her powers and duties upon the Effective Date. The Committee, with consent of the Debtor, has selected BGA Management, LLC d/b/a Alliance Management ("Alliance Management")—with Brock Kline as the primary Alliance Management staff consultant handling this matter—as Liquidating Agent.

1.32    "Liquidating Fund" has the meaning set forth in Section 5.1.1 of this Plan.

1.33    "Maynards Sale" means the sale of certain assets primarily located at or related to the Debtor's Victoria facility, sold to Industrial Asset Corp. doing business as Biditup Auctions Worldwide, Inc. and Maynards Industries (1991) Inc., as approved by the Maynards Sale Order.

1.34    "Maynards Sale Order" means the order entered on February 6, 2015, as docket no. 145, approving the Maynards Sale.

1.35    "Non-Preferred Equity Interest" means any capital stock or other ownership interest in the Debtor that is not a Preferred Interest, whether or not transferable, and any option, call, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtor.

1.36    "Other Priority Claims" means the claims described in Section 3.3.3 of this Plan.

1.37    "Other Secured Claim" means a claim, not classified elsewhere, that is secured by a lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code.

1.38    "Oversight Committee" means the committee to undertake the powers and duties of the Oversight Committee described in Article V of the Plan which will initially be comprised of: AVX Corporation, Vergent Products, Watson-Marlow, Inc., and Honne Capital, LLC for itself and as representative of Derek C. Cheung, holder of Claim No. 62. The Oversight Committee shall assume its powers and duties upon the Effective Date.

1.39    "Plan" means this Chapter 11 Plan of Liquidation as revised or modified or amended.

1.40    "Preferred Interest" means any ownership interest in the Debtor created by the unconverted Series A Convertible Preferred Stock issued by the Debtor.

1.41    "Previously Assumed Agreements" means the contracts, leases, and other agreements that were assumed and assigned in connection with the Cochlear Sale, as authorized by the Cochlear Sale Order.

1.42    "Priority Tax Claim" means a claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.43    "Record Date" means the last date on which a claim transfer will be recognized. The Record Date is the Confirmation Date.

1.44    "Schedules" means the Debtor's schedules of assets and liabilities and the statement of financial affairs on file with the Clerk of the United States Bankruptcy Court for the District of Minnesota, as amended or modified in accordance with Bankruptcy Rule 1009.

1.45    "Secured Lender" means Wells Fargo Bank, National Association.

1.46    "Secured Tax Claim" means a secured claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein and including any related secured claim for tax penalties).

1.47    "Statutory Fees and Court Costs" means court costs and fees payable by the Debtor under 28 U.S.C. § 1930 and United States Trustee fees.

1.48    "Twenty-Day Claim" means a claim for goods sold to the Debtor in the ordinary course of the Debtor's business and received by the Debtor within 20 days before the Filing Date, as specifically defined in section 503(b)(9) of the Bankruptcy Code.

1.49    "Unclassified Priority Claims" means the claims described in Article III of this Plan.

1.50    "Unsecured Claims" means all claims that are unsecured, including Unsecured Priority Claims and General Unsecured Claims.

1.51    "Unsecured Priority Claims" means the Priority Tax Claims, Employee Priority Claims, and Other Priority Claims.

1.52    "Victoria Property" means the real property located at 1495 Steiger Lake Lane, Victoria, MN 55386, which is legally described as follows: Lot 2, Block 1, Point Victoria, according to the recorded plat thereof, Carver County, Minnesota (Torrens property certificate no. 27487.0).

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the classes of claims against and equity interests in the Debtor and specifies which of those classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Expense Claims | N/A | No |
| N/A | Priority Claims | N/A | No |
| 1 | Avoidable Secured Claim – Fischer Technology, Inc. | Yes | Yes |
| 2 | Secured Tax Claims | No | No |
| 3 | Other Secured Claims | No | No |
| 4 | General Unsecured Claims | Yes | Yes |
| 5 | Preferred Interests | Yes | No |
| 6 | Non-Preferred Equity Interests | Yes | No |

*N/A = Not applicable.

# ARTICLE III
# TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS

Certain Allowed claims which are not classified will be treated as follows:

### 3.1   Allowed Administrative Expense Claims

Except as otherwise provided in this Article, all Allowed claims specified in Bankruptcy Code § 507(a)(2), not previously paid, will be paid from the Liquidating Fund in full in cash as soon as practicable following the later of: (i) the Effective Date, or (ii) approval by the Court.

### 3.1.1   Postpetition Operating Expenses

With respect to the Debtor's Allowed operating expenses incurred during the Chapter 11 Case, including Allowed expenses incurred postpetition under the self-insured health plan offered by the Debtor to its employees, the Debtor generally paid these expenses as they came due or through other arrangements thereafter.  If any Allowed Administrative Expense Claims resulting from postpetition operations come due after the Effective Date, or for any other reason have not been paid as of the Effective Date, these claims will be paid from the Liquidating Fund as the claims become due or as otherwise agreed between the holders of such claims and the Liquidating Agent.

### 3.1.2   Twenty-Day Claims

Upon confirmation of the Plan, the Court will enter an order setting deadlines for submission of motions seeking allowance and payment of administrative expenses.  On or before that deadline, any party asserting a Twenty Day Claim must file a motion seeking its allowance and payment.  Parties holding or asserting Twenty-Day Claims that do not file a motion on or before that deadline are forever barred from asserting Twenty-Day Claims against the Debtor, the Liquidating Fund, or their respective property.  The Debtor and/or the Liquidating Agent may object to the validity or amount of Twenty-Day Claims asserted in such motions.  All Allowed Twenty-Day Claims will be paid from the Liquidating Fund in full in cash as soon as practicable following the later of: (i) the Effective Date, or (ii) approval by the Court.  Claims that are not determined to be Twenty-Day Claims may nevertheless be Allowed General Unsecured Claims.

### 3.1.3    Professional Fees and Expenses

The Debtor has paid and intends to pay Allowed professional fees and expenses during the Chapter 11 Case as allowed by Court orders.  Professional fees and expenses incurred through the time of Plan confirmation and not previously Allowed will be subject to Court approval after the Effective Date on a timeline to be determined by the Court.  Any such Allowed claims will be paid from retainers or from the Liquidating Fund in cash as they are approved by the Court.

### 3.1.4    Taxes

In the event that the Debtor has liability to any taxing authority on account of unpaid taxes that accrued and were payable after the Filing Date, the Debtor or the Liquidating Agent will pay such taxes from the Liquidating Fund in full in cash as soon as practicable following the later of: (i) the Effective Date, or (ii) approval by the Court.

### 3.1.5    Reclamation Claims

Only one vendor, Arrow Electronics, Inc., made a reclamation demand under 11 U.S.C. § 546(c) for goods delivered to the Debtor in the 45 days leading up to the Filing Date.  The total amount of the invoices included in the reclamation demand was $12,731.17, and Arrow Electronics, Inc. reserved the right to assert a claim under 11 U.S.C. § 503(b)(9) for a portion of the goods included in the reclamation demand.  The Debtor has determined that the $12,731.17 includes $46.67 of freight charges, and that certain of the goods included in the reclamation demand, with a total value of $7,470.41, remain on hand.  The claim asserted in Arrow Electronics, Inc.'s reclamation demand will receive the following treatment: (i) after the Effective Date, Arrow Electronics, Inc. may retrieve the $7,470.41 worth of goods on hand; (ii) Arrow Electronics, Inc. will have an Allowed reclamation claim in the amount of $5,214.09 for the value of the goods included in the reclamation demand that are no longer in the Debtor's possession; and (iii) Arrow Electronics, Inc. will have an Allowed general unsecured claim, included and treated in Class 4, for the $46.67 of freight charges.  Arrow Electronics, Inc.'s Allowed reclamation claim in the amount of $5,214.09 will be treated as an Administrative Expense Claim and paid from the Liquidating Fund in full in cash as soon as practicable after the Effective Date.

### 3.1.6    Claims Arising Under Assumed Executory Contracts or Unexpired Leases

The holders of Allowed claims arising under any executory contracts or unexpired leases that are assumed under Section 8.1.1 will be paid the Cure Amount Claim, as set forth on Exhibit 8.1 or as otherwise agreed between the holder of the claim and the Liquidating Agent, from the Liquidating Fund in full in cash as soon as practicable after the Effective Date, unless otherwise ordered by the Court.

### 3.2    Statutory Fees and Court Costs

Court costs and fees payable by the Debtor under 28 U.S.C. § 1930 will be paid from the Liquidating Fund in full in cash on the Effective Date or as soon as practicable thereafter or as required under the Office of the United States Trustee's quarterly payment guidelines.  The

Debtor estimates these claims will be nominal, as it has remained current on such payments. After confirmation, the Liquidating Agent will continue to pay quarterly fees to the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until this case is closed by the Court, dismissed, or converted.  This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

### 3.3     Unsecured Priority Claims

#### 3.3.1    Priority Tax Claims

a.       Payment of Priority Tax Claims

Allowed Priority Tax Claims will be paid from the Liquidating Fund in full in cash as soon as practicable following the later of: (i) the Effective Date, or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim.

b.       Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section 3.3.1.a, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim.  Any such claim or demand for any such penalty shall be subject to treatment in Class 4 (General Unsecured Claims), if not subordinated to Class 4 claims pursuant to an order of the Court.  The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Liquidating Fund, or their respective property (other than as a holder of a Class 4 Claim).

#### 3.3.2    Employee Priority Claims and Other Claims Under
#### Section 507(a)(4) or (5) of the Bankruptcy Code

Although the Debtor obtained permission to pay certain prepetition employee priority claims in connection with the Debtor's first day motion regarding employee wages and benefits, the Debtor did not pay employees amounts owed for paid time off ("PTO") accrued but unpaid as of the Filing Date (the "Prepetition PTO").   Any Allowed Employee Priority Claims (including the portion of the Prepetition PTO entitled to priority under section 507(a)(4) or (5) of the Bankruptcy Code) or other Allowed claims entitled to priority under section 507(a)(4) or (5) of the Bankruptcy Code not already paid will be paid from the Liquidating Fund in full in cash as soon as practicable following the later of: (i) the Effective Date, or (ii) the date on which such claims are Allowed.

#### 3.3.3    Other Priority Claims

All other Allowed claims not specifically treated in this section and entitled to priority under § 507(a) of the Bankruptcy Code will be paid from the Liquidating Fund in full in cash as soon as practicable following the later of: (i) the Effective Date, or (ii) the date on which such claims are Allowed.

# ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.1** <u>Class 1</u> **– Avoidable Secured Claim – Fischer Technology, Inc.**

This class consists of the claim of Fischer Technology, Inc. related to the Debtor's purchase of Fischer microscopes. As of the Filing Date, the remaining amount owed was approximately $37,000. As of the Filing Date, Fischer Technology, Inc. had an unperfected security interest in the Fischer microscopes. Pursuant to the Cochlear Sale Order, the Fischer microscopes were sold free and clear of any such security interest, which attached to the sale proceeds.

On the Effective Date, such security interest shall be avoided and discharged. Any Allowed claim of Fischer Technology, Inc. shall be treated as an Allowed General Unsecured Claim that shall come within, and receive the treatment afforded under, Class 4.

**4.2** <u>Class 2</u> **– Secured Tax Claims**

This class consists of all Allowed Secured Tax Claims against the Debtor. The Debtor believes that the only Secured Tax Claim has been asserted by Carver County Taxpayer Services ("Carver County"), in the amount of $1,621.91, with the collateral identified as the Victoria Property.

On and after the Effective Date, except to the extent that a holder of an Allowed Secured Tax Claim agrees to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, the holders of Allowed Secured Tax Claims shall be treated as follows: (i) for any Allowed Secured Tax Claim secured by the Victoria Property (including the claim asserted by Carver County, if Allowed) the holder shall retain its lien on the Victoria Property; (ii) any other holder of an Allowed Secured Tax Claim will, in full satisfaction of its claim and causing the discharge of its lien, be paid from the Liquidating Fund in full in cash as soon as practicable following the later of (a) the Effective Date, or (b) the date on which such claims are Allowed.

**4.3** <u>Class 3</u> **– Other Secured Claims**

This class consists of all Allowed Other Secured Claims. The Debtor estimates that the amount of Allowed claims in this class, if any, will total no more than $20,000.

On and after the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment or has been paid by the Debtor prior to the Effective Date, each holder of an Allowed Other Secured Claim will receive, in full satisfaction of its claim and causing the discharge of its lien, at the sole option of the Liquidating Agent, either: (i) payment from the Liquidating Fund in full in cash as soon as practicable following the later of (a) the Effective Date, or (b) the date on which such claims are Allowed; or (ii) the collateral securing its Allowed Other Secured Claim, as soon as practicable following the later of (a) the Effective Date, or (b) the date on which such claims are Allowed.

**4.4**     **Class 4** – **General Unsecured Claims**

This class consists of all Allowed non-priority unsecured claims against the Debtor.
Except as otherwise provided in this Plan, on one or more distribution dates established under
Section 6.1, each holder of an Allowed General Unsecured Claim shall receive a pro rata share of
the net proceeds of the Liquidating Fund after the payment of all Allowed Administrative
Expense Claims, Allowed Unclassified Priority Claims, Allowed Secured Tax Claims, Allowed
Other Secured Claims, and all costs and expenses of the Liquidating Fund.  General Unsecured
Claims will include claims by counterparties to executory contracts and unexpired leases that are
rejected pursuant to Section 8 of this Plan.

The likely amount of Allowed Claims in this class and the projected distribution to this
class are estimated in the Disclosure Statement.  The actual distribution in this class is highly
dependent on several factors, including which executory contracts or unexpired leases are
assumed and the related cure costs paid; the amount of administrative expense or priority claims,
if any, that become Allowed Claims; the total amount of General Unsecured Claims finally
Allowed; the sale price of the Victoria Property; the collection of accounts receivable; and other
factors.  The Debtor estimates in the Disclosure Statement that the distribution to this class (not
taking into account a net present value analysis) will be between 36% and 63% of the Allowed
claims.

**4.5**     **Class 5** – **Preferred Interests**

On the Effective Date, all Preferred Interests in the Debtor shall be deemed automatically
cancelled, shall be of no further force, whether surrendered for cancellation or otherwise, and the
obligations of the Debtor thereunder or in any way related thereto shall be discharged.  Preferred
Interests are not entitled to any distributions under this Plan.  Holders of Class 5 Preferred
Interests are conclusively deemed to have rejected this Plan, and therefore, the votes of holders
of Class 5 Preferred Interests will not be solicited.

**4.6**     **Class 6** – **Non-Preferred Equity Interests**

On the Effective Date, all Non-Preferred Equity Interests in the Debtor shall be deemed
automatically cancelled, shall be of no further force, whether surrendered for cancellation or
otherwise, and the obligations of the Debtor thereunder or in any way related thereto shall be
discharged.  Non-Preferred Equity Interests are not entitled to any distributions under this Plan.
Holders of Class 6 Non-Preferred Equity Interests are conclusively deemed to have rejected this
Plan, and therefore, the votes of holders of Class 6 Non-Preferred Equity Interests will not be
solicited.

**4.7**     **Special Provisions Relating to Creditors' Rights of Setoff**

Nothing in this Plan shall expand or enhance a creditor's right of setoff, which shall be
determined as of the Filing Date.  Nothing in this Plan is intended to, or shall be interpreted to,
approve any creditor's effectuation of a post-Filing Date setoff without the consent of the Debtor
unless prior Court approval has been obtained.

# ARTICLE V
## MEANS OF EXECUTION OF THE PLAN

**5.1     Liquidating Fund and Liquidating Agent**

### 5.1.1   Liquidating Fund

On the Effective Date, except as otherwise designated in this Plan, all of the Estate Assets shall become part of a liquidating fund ("Liquidating Fund"), which shall be used for the administrative costs of administrating the Plan and for payments to holders of Allowed claims in accordance with the terms of this Plan under the direction of the Liquidating Agent.

The transfer of assets and rights to the Liquidating Fund shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Fund as if the asset or right was still held by the Debtor.

As an integral part of implementation of the Plan, the Liquidating Agent shall sell or otherwise liquidate or abandon all remaining Estate Assets, including the Victoria Property, to fund administration of the Liquidating Fund for the benefit of the Creditors.

### 5.1.2   Liquidating Agent

The Liquidating Agent shall be appointed by the Committee with the approval of the Debtor, and the appointment shall be approved by the Court through the Order confirming the Plan. The Committee, with the Debtor's approval, has selected Alliance Management (with Brock Kline as the primary Alliance Management staff consultant handling this matter), as the Liquidating Agent. In the event of the resignation or termination of the Liquidating Agent, any successor Liquidating Agent shall be appointed by the Oversight Committee. The Liquidating Agent's primary tasks are to receive the Liquidating Fund, liquidate assets, pursue causes of action, administer claims, and distribute proceeds for the benefit of Creditors.

The Liquidating Agent will file a motion, application, or other request to close the Debtor's Chapter 11 Case when the case has been fully administered.

### 5.1.3   Powers and Duties of the Liquidating Agent

a.     Generally

In furtherance of and consistent with the purpose of the Plan, and subject to the direction and consent of the Oversight Committee, in addition to the powers and authority specifically provided elsewhere in the Plan, the Liquidating Agent shall receive the Liquidating Fund, have the powers of an agent to act for the holders of claims under the Plan on account of such claims and be a "representative of the estate" as set forth in 11 U.S.C. § 1123(b)(3)(B) together with the power and authority to (a) hold, manage or sell the Estate Assets, (b) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of this Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer real property on behalf of the Debtor and the Liquidating Fund, (c) establish reserves for Contested Claims, taxes, assessments, professional fees, and other expenses of administration of the Liquidating Fund as may be necessary and appropriate for the

11

operation of the Liquidating Fund, (d) calculate and make distributions from the Liquidating Fund to the holders of all Allowed claims in accordance with the provisions of this Plan, (e) investigate, prosecute, litigate, settle or compromise any objections to claims, Avoidance Claims and Causes of Action on behalf of the Debtor and, as set forth in Section 7.1 of the Plan, those claims may be settled or compromised without notice and a hearing and without Court approval but shall be subject to the consent of the Oversight Committee, (f) review, reconcile or object to claims and resolve such objections as set forth in this Plan, (g) object to the amount of any claim on the Debtor's Schedules if the Liquidating Agent determines in good faith that the claim is invalid, has previously been paid or satisfied, or other grounds exist for an objection, (h) defend, protect and enforce any and all rights and interests transferred to the Liquidating Fund or Liquidating Agent, (i) retain professionals and incur any reasonable and necessary expenses in performance of its duties, and to the extent such payments are approved by the Oversight Committee, to pay those expenses without any further application to the Bankruptcy Court, (j) pay any and all claims, liabilities, losses, damages, costs and expenses incurred by the Liquidating Agent, including all fees and expenses of the Liquidating Agent and professionals retained by the Liquidating Agent, (k) file estate or other tax returns, (l) operate assets for periods reasonably required to preserve or maximize value pending liquidation and distribution to Creditors, (m) open, create, or close accounts to deposit, hold, and disburse funds, (n) invest cash in demand or time deposits to obtain market rates of return pending distributions, (o) file any and all reports and motions or requests for relief with the court or any opposition thereto, (p) extend, renew, enter into, authorize, and benefit from any insurance policies, including but not limited to tail coverage for insurance policies in place on the Filing Date, and rights of indemnification, (q) dissolve the Debtor or otherwise wind up any of the Debtor's corporate affairs and existence, (r) subject to approval of the Oversight Committee, incur indebtedness to fund administration of the Plan, (s) perform any other functions that are necessary to effectuate this Plan and perform its duties as Liquidating Agent, (t) have the power and authority to administer the closure of the Chapter 11 case, and (u) if and to the extent required to effectuate any action necessary in the performance of the Plan or wind up of the Debtor's corporate affairs and existence, have the power and authority to reconstitute the board of directors of the Debtor, by: (i) re-appointing one or more of the former directors (specifically, those who were serving on the Filing Date) who agree to the reappointment, or (ii) seeking an order of the Court appointing a board of directors.  In all circumstances, the Liquidating Agent will act in the best interests of the Creditors.

b.     Insurance Matters

As further described in Section III(J) of the Disclosure Statement, the Debtor recently conducted a thorough review of its insurance coverage in order to identify continuing coverage needed to protect the estate.  The Debtor already let certain coverage lapse, purchased two years' worth of tail coverage on two policies, and renewed other policies at lower levels of coverage. Other policies are set to expire at the end of September 2015, including the directors and officers ("D&O") policy.  Based on the Debtor's anticipated status in October, the Debtor believes none of those policies need to be renewed.  Due to the potential risk of future claims, its statutory indemnification obligations, and the claims-made nature of the D&O policy, however, the Debtor and Committee have determined that two years' worth of tail D&O coverage, at a total cost of approximately $39,100, should be purchased.  Through all these changes to its insurance coverage, the Debtor estimates that the estate will save approximately $164,000 (or 65%)

compared to its previous insurance costs, even when the cost of the various tail coverages is included.

The Liquidating Agent shall use funds from the Liquidating Fund to: (a) purchase two years' worth of tail coverage under the current D&O policy; and (b) renew and pay for continuing coverage under any policies that would otherwise expire after confirmation of the Plan, for such time and in such amounts as is determined, by the Liquidating Agent in consultation with the Oversight Committee, to be appropriate to protect the estate.

### 5.1.4    Compensation and Retention of Professionals

The Liquidating Agent will be entitled to be paid reasonable compensation and expenses from the Liquidating Fund, subject to the consent of the Oversight Committee. The Liquidating Agent will be entitled to retain professionals without court approval but with consent of the Oversight Committee to assist in its duties, and will be entitled to pay such professionals reasonable compensation and expenses, subject to the consent of the Oversight Committee. The Liquidating Agent may hire former employees and other "insiders" (as that term is defined in the Bankruptcy Code) of the Debtor for post-confirmation services, and may pay such individuals reasonable compensation and expenses, subject to the consent of the Oversight Committee. For certain post-petition services—after the Maynards Sale and the Cochlear Sale, and the termination of most other employees—the Debtor has retained certain employees including Mark Thomas (Debtor's CEO), Chad Ruwe (Debtor's VP and GM of the Victoria facility), Curtis Ling (Debtor's Facility Manager of the Victoria facility), Suzanne Smieja (Debtor's accounting manager), and a few others providing services related to IT and the collection of accounts receivable. The Liquidating Agent anticipates requesting post-confirmation services from one or more of those individuals. The Liquidating Agent may retain attorneys, consultants, and other professionals that represent the Debtor, subject to the consent of the Oversight Committee. Fees that the Debtor's professionals incur on behalf of the Debtor after the Effective Date in connection with the implementation of this Plan may be paid out of the Liquidating Fund, subject to the consent of the Liquidating Agent and Oversight Committee, or by Court Order. Any dispute as to such compensation and expenses between the Liquidating Agent, its professionals, and the Oversight Committee, or any objection by any party in interest as to such compensation and expenses, will be resolved by the Court on motion.

### 5.1.5    Removal of the Liquidating Agent.

At any time upon thirty (30) days' written notice to the Liquidating Agent and upon a unanimous vote by the members of the Oversight Committee, the Oversight Committee may move the Court for an order removing the Liquidating Agent and appointing a successor Liquidating Agent. The motion shall identify a proposed successor Liquidating Agent and generally describe the qualifications of the person to act as successor Liquidating Agent. The Court shall grant the motion if all members vote in favor of the removal and cause exists for the removal of the Liquidating Agent.

### 5.2    Oversight Committee

The Oversight Committee shall consist initially of: AVX Corporation, Vergent Products, Watson-Marlow, Inc., and Honne Capital, LLC for itself and as representative of Derek C.

Cheung, holder of Claim No. 62. The Oversight Committee may act with as few as two members. In the event that a resignation or termination of members of the Oversight Committee reduces the number of members to less than two members, then one successor member shall be appointed by the remaining member and the Liquidating Agent. The Oversight Committee will monitor the Liquidating Agent and all activities set forth in this Plan. The Oversight Committee will have the power and authority to ratify or reject decisions of the Liquidating Agent, and in its discretion, the Oversight Committee may delegate to the Liquidating Agent such power and authority as it deems proper. The members of the Oversight Committee will not be paid for their services except for reimbursement of actual expenses incurred by such members. The Oversight Committee will be governed by by-laws substantially in the form of those attached as <u>Exhibit 5.2</u>. In the event that a vote by the Oversight Committee results in a tie vote, the Liquidating Agent (although not a member) shall be entitled to vote on that issue as set forth in Section 2.5 of Exhibit 5.2.

### 5.3    Liability and Indemnification of Liquidating Agent and Oversight Committee Members

Neither the Liquidating Agent, Oversight Committee members, nor their designees, employees, professionals, or agents will be liable for the act or omission of any other designee, employee, professional, or agent, nor will the Liquidating Agent or Oversight Committee members be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omissions resulting from willful misconduct, gross negligence, or fraud. The Liquidating Agent, Oversight Committee members, their designees, employees, professionals, or agents shall be indemnified and held harmless, including the cost of defending such claims and the attorney fees in seeking indemnification, by the Liquidating Fund against any and all claims arising out of their duties under this Plan, except to the extent their actions constitute willful misconduct, gross negligence, or fraud.

### 5.4    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Debtor and the Liquidating Agent, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, including, but not limited to, all documentation required by purchasers and title companies to transfer real property on behalf of the Debtor and the Liquidating Fund. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, or similar tax: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, or assignments executed in connection with any of the foregoing or pursuant to this Plan.

**5.5     Cancellation of Instruments and Stock**

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtor, except such instruments that are authorized or issued under this Plan, shall be cancelled and extinguished.   Additionally, as of the Effective Date, all Preferred Interests and Non-Preferred Equity Interests in the Debtor, and any and all warrants, options, rights, or interests with respect to such Preferred Interests or Non-Preferred Equity Interests that have been issued, shall be deemed cancelled and extinguished without any further action of any party.  The holders of, or parties to, the cancelled notes, share certificates, and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except any rights provided pursuant to this Plan.

**ARTICLE VI**
**DISTRIBUTIONS AND CLAIMS ADMINISTRATION**

**6.1     Distributions**

Unless otherwise provided in this Plan, and subject to Sections 6.4 and 6.5 of this Plan, the Liquidating Agent shall make an initial distribution to Creditors within ninety (90) days after the Effective Date or as soon as practicable thereafter.  The Liquidating Agent shall make a final distribution after determining, in consultation with the Oversight Committee, that all assets that feasibly could be liquidated have been liquidated and that the next distribution will be the final distribution.  At its discretion, the Liquidating Agent may make, but is not required to make, additional distributions after the initial distribution and before the final distribution.

**6.2     Method of Payment**

Payments under this Plan will be made by check, mailed with first class postage pre-paid, to the holder of each claim at the address listed on its proof of claim as of the Record Date, or if no proof of claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules as of the Record Date.  Holders of claims as of the Record Date may contact the Liquidating Agent to amend their addresses as follows:

> Brock Kline
> Alliance Management
> 601 Carlson Parkway
> Carlson Towers, Suite 110
> Minneapolis, MN 55305
> (952) 475-2225

**6.3     Claims Administration Responsibility**

**6.3.1     Reservation of Rights to Object to Claims**

Unless a claim is specifically Allowed under this Plan, or otherwise Allowed prior to or after the Effective Date, the Liquidating Agent shall have and retain any and all objections to any and all claims and motions or other requests for the payment of claims, whether administrative expense, secured, or unsecured, including, without limitation, any and all objections to the

validity or amount of any and all alleged administrative expense claims, priority tax claims, liens and security interests, whether under the Bankruptcy Code, other applicable law, or contract.

### 6.3.2   Filing of Objections

Unless otherwise ordered by the Court in the Confirmation Order, any objections to claims, except objections to administrative expense claims or objections arising under 11 U.S.C. § 502(d), will be filed within ninety (90) days after the Effective Date (unless such day is not a business day, in which case such deadline will be the next business day thereafter) or at such later date as approved by the Court upon request from the Liquidating Agent.  Any claim objections arising solely under 11 U.S.C. § 502(d) are not subject to the 90 day deadline and may be pursued through an adversary proceeding asserting an Avoidance Claim.  An objection to a claim will be deemed properly served on the holder of the claim if the Liquidating Agent effects service by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as allowed and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or interest or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the claimholder in the Chapter 11 Case.

### 6.3.3   Determination of Claims

Except as otherwise agreed by the Liquidating Agent, any claim as to which a proof of claim or motion or other request for payment was timely filed in the Chapter 11 Case may be determined and liquidated pursuant to (a) a Final Order of the Court, or (b) a Final Determination under applicable non-bankruptcy law, and will be deemed Allowed in such liquidated amount and satisfied in accordance with this Plan.  Nothing contained in this Plan, the Disclosure Statement, or the Confirmation Order will constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the estate, the Liquidating Agent or Liquidating Fund may have against any person in connection with or arising out of any claim or claims, including, without limitation, any rights under section 157(b) of Title 28 of the United States Code.

### 6.4   Procedures for Treating and Resolving Contested Claims

### 6.4.1   No Distributions Pending Allowance

Notwithstanding any other provision hereof, no payments or distributions will be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled or withdrawn or have been determined by a Final Order, and the Contested Claim has become an Allowed claim.

### 6.4.2   Claim Estimation

The Debtor or the Liquidating Agent may request estimation or limitation of any Contested Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code; provided, however, that the Court will determine: (a) whether such Contested Claim is subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (b) the timing and procedures for such estimation proceedings, if any.  Unless provided otherwise in an order of the Court, the estimated amount shall constitute the Allowed amount of such claim or a maximum limitation on such claim, as the Court may direct; provided, however, that if the estimate

16

constitutes the maximum limitation on such claim, the Debtor or the Liquidating Agent may elect to pursue supplemental proceedings to object to the ultimate allowance of such claim. The foregoing shall not limit the rights granted by Code section 502(j).

### 6.4.3    No Distribution if Cause of Action Asserted

Notwithstanding any other provision hereof, no payment or distribution will be made with respect to all or any portion of a claim or Allowed claim held by a claimant against whom an Avoidance Claim or Cause of Action is asserted unless and until such Avoidance Claim or Cause of Action has been settled or withdrawn or has been determined by Final Order.

### 6.4.4    Reserve Account for Contested Claims

From and after the Effective Date and until such time as all Contested Claims have been compromised and settled or determined by Final Order or Final Determination, the Liquidating Agent shall establish and maintain a separate reserve account in an amount equal to distributions that would have been made to the holders of Contested Claims if each Contested Claim were an Allowed claim equal to the lesser of: (i) the Contested Claim amount, which is the greater of (a) the amount of the claim scheduled by the Debtor in its schedules or (b) the amount listed on the proof of claim filed by the holder of the claim; (ii) the amount in which the Contested Claim is estimated by the Court for purposes of allowance, which amount unless otherwise ordered shall constitute the maximum amount in which the Contested Claim may become an Allowed Claim; or (iii) such other amount as may be agreed upon by the Liquidating Agent and the holder of the Contested Claim.

### 6.4.5    Payment Upon Allowance and Disallowance of Contested Claims

At such time as a Contested Claim becomes, in whole or in part, an Allowed claim, the Liquidating Agent shall distribute to the holder thereof the distribution(s) to which the holder is then entitled under the Plan. Such distribution, if any, shall be made as soon as practicable after the entry of the Final Order allowing the claim. In the event that a Contested Claim is not Allowed, in whole or in part, the holders of Allowed claims in the same class as the holder of the Contested Claim shall receive their pro rata share of any amount reserved on account of the Contested Claim in the next distribution under the Plan, or, if no further distribution is scheduled under the Plan, at such time as all Contested Claims have been compromised and settled or determined by Final Order.

### 6.5    Record Date

The Record Date for claim transfers is the Confirmation Date. Claim transfers will not be recognized after the Confirmation Date. Payment under the Plan will be mailed to the address of the holder of the claim as of the Record Date until the holder of the claim as of the Record Date notifies the Liquidating Agent in writing of a different address.

### 6.6    Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims

Except as provided by previous Order, distributions under this Plan to each holder of an Allowed Insured Claim shall be in accordance with the treatment provided under this Plan for the

class in which such Allowed Insured Claim is classified, subject to reserve as a Contested Claim under Section 6.4.4 of this Plan and to reduction of the total claim amount on a dollar-by-dollar basis to the extent that such Allowed Insured Claim is satisfied from proceeds payable to the holder thereof under any pertinent insurance contracts and applicable law.  Nothing in this Section 6.6 constitutes a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities that any entity may hold against any other entity, including the Debtor's insurers.

### 6.7    De Minimis Distributions

The Liquidating Agent shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Class 4 claim.  To the extent that any interim distribution is not paid to the holder of a Class 4 claim because it amounts to less than twenty-five dollars ($25.00), the amount of such withheld distribution shall be reserved for addition to any future distribution or to the final distribution to such holder of a Class 4 claim, and will be made at that time if the total distribution is at least twenty-five dollars ($25.00).

### 6.8    Unclaimed Payments

In the event a payment is returned to the Liquidating Agent unclaimed, with no indication of the payee's forwarding address, the Liquidating Agent will hold such payment for a period of 90 days from the date of return.  If not claimed by the payee by the end of that period, the payment will become property of the Liquidating Fund for distribution to holders of General Unsecured Claims.  In the event there are unclaimed funds at the end of the distribution process and redistribution to other holders of Claims is impractical, the Liquidating Agent shall pay over such funds to the Volunteers Lawyers Network for the support of its programs designed to provide pro bono assistance to persons needing legal services in bankruptcy matters who are unable to afford such services.

### 6.9    Time Bar to Check Payments

Checks issued by the Liquidating Agent shall be null and void if not negotiated within 90 days from and after the date of issuance.  Requests for re-issuance of any check shall be made to the Liquidating Agent by the holder of the Allowed claim with respect to which such check originally was issued.  Any claim in respect of such a voided check must be made on or before 120 days after the date of issuance of such check.  After 120 days after issuance of a non-negotiated check for which the holder of the Allowed claim did not request re-issuance, all claims in respect of voided checks shall be discharged and forever barred and the Liquidating Fund shall retain all monies related thereto for distribution in accordance with this Plan.

### 6.10    Setoffs

The Liquidating Agent may, pursuant to applicable non-bankruptcy law, set off against any distribution(s) to be made pursuant to the Plan, the claims, rights, and Causes of Action of any nature the Debtor or the Liquidating Agent may hold against the holder of such Allowed claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release of any such claims, rights, and Causes of Action that the Debtor or the Liquidating Agent may hold against such holder.

## ARTICLE VII
## RETENTION AND ENFORCEMENT OF CLAIMS OR INTERESTS BELONGING TO THE DEBTOR OR THE ESTATE

### 7.1     Preservation of Causes of Action and Avoidance Claims

On the Effective Date, the Liquidating Agent shall be vested in and retain, as the representative of the estate under section 1123(b)(3)(B) of the Bankruptcy Code, all Causes of Action, including Avoidance Claims, and the Liquidating Agent may enforce or not enforce, consistent with its fiduciary duties, any Causes of Action that the Debtor, the estate, or the Liquidating Agent may hold against any entity to the extent not expressly released under this Plan or by any Final Order of the Court, including, but not limited to, those items identified on Exhibit 7.1.  No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Liquidating Agent will not pursue any and all available Causes of Action against them.  The Debtor expressly reserves all Causes of Action, including Avoidance Claims, for later enforcement by the Liquidating Agent.  Therefore, no preclusion doctrine shall apply to a Cause of Action upon, after, or as a consequence of, the Confirmation Order.  The Liquidating Agent may, at its option, compromise any Cause of Action, Avoidance Claim, or any other claim, interest, or objection retained herein after the Effective Date without notice and a hearing and without Court approval. To the extent required by the Bankruptcy Code, the Liquidating Agent is hereby designated as the "Plan Representative."  All recoveries on the Causes of Action and Avoidance Claims shall be retained by the Liquidating Agent for making distributions under this Plan.  Nothing in this Plan shall shorten or otherwise affect the Liquidating Agent's deadline to assert Avoidance Claims or other Causes of Action as governed by section 546(a) of the Bankruptcy Code or other applicable law.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1     Assumption or Rejection of Executory Contracts and Unexpired Leases

Each contract, lease, or other agreement listed on Exhibit 8.1 as an agreement to be assumed (the "Additional Assumed Agreements") shall be assumed as of the Effective Date, to the extent that each such Additional Assumed Agreement has not already expired, concluded, or terminated under its own terms.  Because the Previously Assumed Agreements have already been assumed and assigned by the Debtor, they are not included on Exhibit 8.1, and their status will not be affected by this Plan.  All other executory contracts, unexpired leases, or other agreements that are not Additional Assumed Agreements and were not previously assumed or rejected by Order of the Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date.  Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts and unexpired leases.

### 8.2     Cure of Defaults

Upon information and belief, all Cure Amount Claims for the Previously Assumed Agreements have been satisfied in accordance with the terms and procedures of the Cochlear

Sale, the related process, and the Cochlear Sale Order, and no Cure Amount Claims exist related to the Previously Assumed Agreements; provided, however, that in the event a Cure Amount Claim remains due and owing for the Previously Assumed Agreements, such amount is owed by the purchaser pursuant to the Cochlear Sale Order, and not by the Debtor or the Liquidating Agent.  The Liquidating Agent shall retain all rights to contest the estate's liability for any such outstanding Cure Amount Claims.

The Debtor has identified the Cure Amount Claims that it believes exist for the Additional Assumed Agreements.  Payments of any Cure Amount Claims for the Additional Assumed Agreements shall be made by the Liquidating Fund as provided in Section 3.1.6.  The Liquidating Agent shall retain all rights to contest any Cure Amount Claims asserted in connection with the Additional Assumed Agreements.

### 8.3    Bar Dates for Rejection Damage Claims

To the extent not subject to a claims bar date set forth in any prior or subsequent order of the Court, claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of this Plan must be filed with the Court no later than 30 days after the entry of the Confirmation Order and, upon allowance, shall be an Allowed General Unsecured Claim.  Any claims not filed within such applicable time periods shall be forever barred from receiving a distribution from the Debtor, the estate, or the Liquidating Fund.

**ARTICLE IX**
**CONFIRMATION OF THE PLAN**

### 9.1    Conditions Precedent to Confirmation

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 9.3 of this Plan:

a.    The Confirmation Order shall be reasonably acceptable in form and substance to the Debtor.

b.    This Plan shall not have been materially amended, altered or modified from the version as filed on June 3, 2015, unless such material amendment, alteration or modification has been made in accordance with Section 12.1 of this Plan.

### 9.2    Conditions Precedent to the Effective Date

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 9.3 of this Plan:

a.    The Court shall have entered the Confirmation Order, the Confirmation Order shall be a Final Order, and no stay of the Confirmation Order shall then be in effect.

b.    The Debtor shall have sufficient cash on hand to pay obligations required to be paid on or as soon as reasonably practicable after the Effective Date of this Plan.

20

c.      This Plan shall not have been materially amended, altered or modified from this Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section 12.1 of this Plan.

### 9.3      Waiver of Conditions to Confirmation or Effective Date

The conditions to Confirmation and the conditions to the Effective Date may be waived in whole or in part at any time by the Debtor without an order of the Court.

### 9.4      Cramdown

The Debtor requests confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired class that has not accepted or is deemed not to have accepted this Plan pursuant to section 1126 of the Bankruptcy Code.

### 9.5      Effect of Confirmation of the Plan

#### 9.5.1      Title to and Vesting of Assets

All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date, to the full extent allowed by section 1141(b) of the Code, all property of the Debtor and the estate vests in the Liquidating Fund and such property is free and clear of all liens, encumbrances, claims, and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.  From and after the Effective Date, the Liquidating Fund may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan.

#### 9.5.2      Corporate Action

On the Effective Date, all matters provided for herein that would otherwise require approval of the stockholders or directors of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of Minnesota, without any requirement of further action by the stockholders or directors of the Debtor.

#### 9.5.3      Injunction Against Interference with the Plan

The Plan is binding on the Debtor, any Creditor, any holder of Preferred Interests or Non-Preferred Equity Interests, or others to the full extent provided in section 1141(a) of the Code. All entities who are bound by this Plan, including entities with claims not listed on the Schedules, or who are listed on the Schedules as disputed, unliquidated, or contingent and who did not timely file proofs of claim, are hereby enjoined and prevented from commencing or continuing any judicial or administrative proceeding or employing any process to interfere with the consummation or implementation of this Plan or the payments to be made hereunder, including commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the estate, the Oversight Committee, or the Liquidating Agent;

21

provided, however, such injunction shall not prohibit any entity from pursuing actions they may have against third parties.

### 9.5.4   No Discharge

Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan does not discharge the Debtor's indebtedness. Furthermore, no provision contained herein, the Confirmation Order, section 1141 of the Bankruptcy Code, or in any other documents filed in this bankruptcy proceeding shall be construed as discharging, releasing, or relieving any party, in any capacity, from any liability with respect to the Pension Plan under any law, government policy, or regulatory provision.

### 9.5.5   Exculpation

**Subject to the occurrence of the Effective Date, none of the Exculpated Parties shall have or incur any liability to any holder of a claim or interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case and this Plan, the solicitation of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan, or the property to be distributed under this Plan; provided, however, that: (a) nothing herein is meant to or shall be deemed to expand or otherwise modify the scope of 11 U.S.C. § 1125(e); (b) nothing herein is meant to or shall be deemed to affect the police and regulatory activities of governmental agencies; (c) the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; and (d) nothing in this Plan shall, or shall be deemed to, release or exculpate the Exculpated Parties with respect to their respective obligations or covenants arising pursuant to this Plan, or for any gross negligence, willful misconduct, or fraud.**

### ARTICLE X
### EVENTS OF DEFAULT

Unless otherwise provided elsewhere in the Plan, default with respect to the Debtor's or the Liquidating Agent's obligations under the Plan to any Creditor or other person will not occur unless and until such Creditor or other person has delivered written notice of such default to the Liquidating Agent at the address set out in Section 6.2 of the Plan, and the Debtor or the Liquidating Agent has failed to cure such default within 30 days after receipt of such written notice.  If the Debtor or the Liquidating Agent fails to cure a default, a Creditor's or other person's sole remedy is a claim for breach of contract, and the Liquidating Agent shall have such claims and any other remedies provided for in the Plan or pursuant to any interests the Debtor has granted to the Liquidating Agent under the Plan.

### ARTICLE XI
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain such jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible to the full extent permitted by the Code, including jurisdiction to:

a.      Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate, or establish the priority or secured or unsecured status of any claim, including the resolution of any request for payment of any Administrative Expense Claims, and the resolution of any objections to the amount, allowance, priority, or classification of claims;

b.      Resolve any issues arising under asset purchase agreements entered into during the Chapter 11 Case or their respective sale orders to the extent required for the implementation or execution of the Plan;

c.      Resolve any issues related to the Debtor's agreement with BWI, as described and addressed in docket numbers 35 and 64, or with any other customers;

d.      Determine all questions and disputes regarding title to the assets of the estate to the extent required for the implementation or execution of the Plan;

e.      Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

f.      Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any claims arising therefrom, including any cure amount claims;

g.      Ensure that distributions to holders of Allowed claims are accomplished pursuant to the provisions of this Plan;

h.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and either grant or deny any applications involving the Debtor that may be pending on the Effective Date or brought thereafter;

i.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

j.      Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is entered into or delivered pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

k.      Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into, delivered, or created in connection with this Plan, the Disclosure Statement, or the

23

Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

l.      Issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, and enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

m.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

n.      Determine any other matters that may arise in connection with or in relation to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

o.      Enforce or clarify any orders previously entered by the Court in the Chapter 11 Case;

p.      Enter a final decree closing the Chapter 11 Case;

q.      Determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any Contested Claims for taxes;

r.      Recover all assets of the Debtor and its estate, wherever located; and

s.      Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### 12.1    Modification of the Plan

Subject to the restrictions on alteration, amendment, and modification set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan before the Effective Date.

### 12.2    Revocation of the Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or any other party in interest.

### 12.3    Dissolution of the Committee

On the Effective Date, the Committee shall be dissolved, and the members thereof and the professionals retained thereby shall be released and discharged from their respective fiduciary obligations.  The dissolution of the Committee shall not impair the ability of its members to serve on the Oversight Committee.

### 12.4    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.5    Corporate Documents

The certificate of incorporation of the Debtor and related documents will be amended to the extent necessary as required by section 1123(a)(6) of the Bankruptcy Code and as may otherwise be required by this Plan.

### 12.6    Regulated Rates

This Plan affects no rates subject to approval by any governmental regulatory commission.

### 12.7    Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

### 12.8    Governing Law

The rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Minnesota, without giving effect to principles of conflict of laws.

### 12.9    Construction

The section headings contained in this Plan are for reference purposes and shall not affect in any way the meaning or interpretation of the Plan.  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.

IN WITNESS WHEREOF, the undersigned has executed this Chapter 11 Plan of Liquidation as of the date set forth above.

HEI, Inc.

Mark B. Thomas, CEO

_/e/ Sarah M. Olson_
James L. Baillie (#3980)
James C. Brand (#387362)
Sarah M. Olson (#390238)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, #4000
Minneapolis, MN  55402
Telephone:  (612) 492-7000
Facsimile:  (612) 492-7077
jbaillie@fredlaw.com
jbrand@fredlaw.com
solson@fredlaw.com

ATTORNEYS FOR DEBTOR

52625503_6

## **Exhibit 5.2**

**Oversight Committee By-Laws**

**BY-LAWS OF THE OVERSIGHT COMMITTEE**
**In re HEI, INC.**

**Case No. 15-40009**

## 1.    THE COMMITTEE

1.1.    <u>Appointment of Committee</u>.  On January 9, 2015, the United States Trustee for the District of Minnesota, under the authority conferred by Section 1102(a)(1) of Title 11, United States Code ("<u>Bankruptcy Code</u>"), appointed the Official Committee of Unsecured Creditors ("<u>Committee</u>") of HEI, Inc., Case No. 15-40009 (the "<u>Debtor</u>"), currently pending in the United States Bankruptcy Court for the District of Minnesota ("<u>Bankruptcy Court</u>").  Pursuant to the Debtor's Chapter 11 Plan of Liquidation dated _____, 2015 ("<u>Plan</u>"), and confirmed on _____, 2015, all Estate Assets[1] became part of the Liquidating Fund, which shall be used to liquidate remaining Estate Assets and distribute the proceeds according to the terms of the Plan under the direction of the Liquidating Agent.  Under Section 12.3 of the Plan, the Committee was dissolved and, under Section 5.2 of the Plan, this Oversight Committee was appointed to undertake the powers and duties granted to it as set forth in the Plan, including monitoring the Liquidating Agent and the activities set forth in the Plan.

1.2.    The members of the Oversight Committee are referred to individually herein as a "<u>Member</u>" and collectively as the "<u>Members</u>."  The functions of the Oversight Committee are set forth in the Plan.  Although the Committee has been dissolved, all Members of the Oversight Committee shall continue to have the duties imposed upon committee members pursuant to 11 U.S.C. § 1103.

1.3.    <u>Membership</u>.  The Oversight Committee is composed of the Members listed in <u>Exhibit A</u>, which also identifies the representatives for the respective Members where appropriate.  The Oversight Committee shall initially consist of four Members who served as members on the Committee.

1.4.    <u>Chairperson</u>.  The Oversight Committee will select its chairperson ("<u>Chairperson</u>") at its first meeting.  In the event the Chairperson resigns or for any other reason is unable to serve, the majority of the Members entitled to vote shall choose a successor. Additionally, such a majority may at any time, with or without cause, replace the Chairperson at: (i) a meeting called with at least three days' advance written notice, or (ii) a meeting attended by all Members.

1.5.    <u>Other Professional Persons</u>.  Pursuant to Sections 1.32 and 5.1.2 of the Plan, the Committee, with approval of the Debtor, selected BGA Management, LLC d/b/a Alliance Management to serve as the Liquidating Agent.  The Liquidating Agent is entitled to retain professionals to assist in its duties and to pay such professionals' reasonable compensation and expenses, subject to the consent of the Oversight Committee.  Through execution of these By-Laws, the Oversight Committee consents to the Liquidating Agent's retention of the law firm

---

[1]    All capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

of Fafinski Mark & Johnson, P.A., to serve as the Liquidating Agent's general bankruptcy counsel ("Counsel").

       1.6.   Resignation. A Member may resign at any time by giving written notice thereof to the Liquidating Agent and a copy to Counsel.

       1.7.   Replacement of Representative of Member. If any representative of a Member that is a corporate entity resigns, dies, is no longer employed by, or is no longer an agent of the Member represented, or for any other reason is unable to serve, the Member represented shall have the absolute right to designate a successor representative or alternate, as the case may be, which shall be any authorized employee or agent of such Member.

       1.8.   Resignation, Removal, and Replacement Members. In the event of the resignation or removal of any Member of the Oversight Committee, the Oversight Committee shall perform all of its functions with its reduced number (disregarding such vacancy for purposes of determining a majority). The Oversight Committee may act with as few as two (2) members. If the resignation or removal reduces the number of members to less than two (2) members, then one successor Member shall be appointed by the remaining Member and the Liquidating Agent.

2.     MEETINGS AND ACTION BY THE OVERSIGHT COMMITTEE.

       2.1.   Calling and Notice. Meetings of the Oversight Committee may be called by the Chairperson, the Liquidating Agent, or by Counsel, and shall be called by Counsel, the Liquidating Agent, or the Chairperson upon the request of two of the voting Members. Notice of the time and place of each meeting of the Oversight Committee shall be given to each Member and its counsel no less than two (2) business days in advance of such meeting except when such notice is impractical or unreasonable due to exigent circumstances. No notice of an adjourned meeting need be given, other than by announcement at the meeting at which the adjournment is taken and by reasonable notice (under the circumstances) to any Members and their counsel who were not present at such meeting. The Oversight Committee shall endeavor, whenever feasible, to determine at each meeting when the next meeting shall be held. If feasible, each notice of a meeting shall be in writing; if not, notice may be given orally, by telephone or otherwise.

       2.2.   Place of Meetings; Meetings by Conference Call. Meetings of the Oversight Committee shall be held at such place as designated by the Oversight Committee. Meetings shall be held in person or by conference call.

       2.3.   Meeting Agenda. The agenda for regularly scheduled meetings shall be prepared by Counsel. Any Member or the Liquidating Agent may supplement the Agenda by circulating additional items by email to all other Members, the Liquidating Agent, and Counsel. If feasible, a proposed agenda will be circulated to each Member, the Liquidating Agent, and Counsel at least one (1) business day in advance of each Oversight Committee meeting.

       2.4.   Quorum. A majority of all voting Members shall constitute a quorum for the transaction of business at any meeting. A quorum shall include Members attending in person, by Proxy (with respect to any Oversight Committee votes within the scope of such

Proxy), and by telephone connection as long as such connection is sufficient for all attending Members to hear each other attending Member (in each such case, such Member deemed to be "Present").

2.5.    Voting; Polling by Telephone.  Each voting Member shall be entitled to one vote, and may attend and vote (a) in person by its representative, or (b) through a designated alternate.  Subject to Section 2.7, all issues to be voted on shall be decided by a simple majority of those present at the meeting in which the vote takes place.  Each Member shall have the right to authorize any other Member to cast the Member's vote for them ("Voting by Proxy") in the event that the Member is not able to attend or participate by telephone in a meeting.  Action of the Oversight Committee shall be authorized by the vote of a majority of the Members Present at the time of the vote if there is a quorum.  A Member who abstains shall be counted as voting.  A Member recused from voting under Section 2.7 shall not be counted as voting.  In the event that a vote by the Oversight Committee results in a tie vote on an issue other than a vote under Section 2.7(b), the Liquidating Agent (although not a Member) shall be entitled to vote on that issue.

The designation of alternates at meetings may be in such form, written or oral, as may be acceptable to the Chairperson, upon advice of Counsel.  If the matter to be voted on is one of significance and urgency, as determined by a majority of the Members Present, with the advice of Counsel, a reasonable effort shall be made during the meeting to poll by telephone or email all absent Members, provided that the failure to reach any such absent Member will not affect the validity of any vote otherwise proper under these By-Laws.  Telephone or email votes solicited pursuant to this section, along with Votes by Proxy, shall be given full voting effect, and may be counted in computing a quorum in respect of the relevant action.  Attendance at meetings of the Oversight Committee shall be limited to Members, their respective counsel, the Liquidating Agent, professionals or agents employed or retained by the Oversight Committee, and other persons invited by the Oversight Committee for special or limited purposes.

2.6.    Action Without Meeting.  Any action required or permitted to be taken by the Oversight Committee, or any subcommittee, may be taken without a meeting provided that a reasonable effort is made to contact each Member or subcommittee member for its vote and to notify each ex officio member of the pendency of such action, and the action voted on is approved by no less than a majority of the entire Oversight Committee or subcommittee then acting as such.  Such polling shall be conducted by the Chairperson or by Counsel acting upon the direction of the Chairperson, or by the chairperson of a subcommittee.  Any action taken pursuant to this section shall be memorialized in writing and filed with the minutes of the Oversight Committee or subcommittee, as the case may be.

2.7.    Conflicts of Interest.  In the event that any matter under review or consideration by the Oversight Committee may involve a conflict of interest with respect to any Member, such Member shall disclose such potential conflict of which he or she has knowledge, shall be removed from voting on the matter voluntarily or, if determined by the Oversight Committee to involve a conflict of interest, may be excluded by vote of a majority of the Members then Present and not subject to such conflict of interest from that portion of the meeting at which such matter is considered.

3

(a)     A Member shall be deemed to have an irrebuttable conflict in matters concerning:  (1) any potential or actual Causes of Action (as that term is defined in the Plan) asserted against the Member; and (2) any potential or actual Contested Claim (as that term is defined in the Plan) involving a claim asserted by the Member.

(b)     Counsel shall make a determination as to whether a Member should be excluded from a meeting or any portion thereof and shall submit a recommendation to the Oversight Committee in respect of each potential conflict unless the Member voluntarily abstains from voting or otherwise participation in the consideration of the matter giving rise to a potential conflict.  Any Member subject to an alleged conflict of interest that does not fall within the scope of Section 2.7(a) shall be provided with a reasonable opportunity to be heard and to provide other Members with additional information and/or refute any allegations of its alleged conflict of interest prior to any Oversight Committee vote regarding such Member's alleged conflict of interest.  Whether a conflict of interest exists as to a particular Member or group of Members will be determined on an individual basis and each Member shall have the opportunity to be heard and have the Oversight Committee vote in connection with its alleged conflict of interest.  For the purpose of a vote under this Section to exclude a particular Member from a meeting, the Member not allowed to vote shall not be counted for a quorum.  Also, for purposes of a vote under this Section, if Counsel recommended that more than one Member be excluded from a meeting for a substantially similar reason ("Excluded Members"), and if one or more of the Excluded Members requests a reasonable opportunity to be heard on the conflict issue, the Excluded Members shall not be entitled to vote on whether a conflict of interest exists on that issue for any other Excluded Member.  Additionally, for the purpose of a vote under this Section, a majority vote is required to overrule Counsel's recommendation to the Oversight Committee on issues of potential conflicts.   For clarification, in the event of a tie vote, Counsel's recommendation is adopted.

(c)     Consistent with the foregoing, the Member having a conflict of interest shall not have access to summaries, analyses, reports or work product prepared by the professionals of the Oversight Committee with respect to the matter in which the conflict of interest exists, except to the extent determined to be appropriate under the circumstances in the discretion of the Oversight Committee.

(d)     Each Member of the Oversight Committee retains the right to appear in the Chapter 11 cases of the Debtor in respect of its own interests and to take a position different from that of the Oversight Committee, provided, however, that no Member shall purport to represent or speak for the Oversight Committee in connection therewith.  While all Members acknowledge that they are acting in a fiduciary capacity as defined by law, nothing contained in these By-Laws shall:  (i) prevent any Member from exercising or seeking to enforce or protect any of its rights as an individual creditor or other party-in-interest; or (ii) otherwise affect the ability of any Member to act in its capacity as an individual creditor or other party-in-interest as it may deem appropriate, whether or not such actions are opposed by the Oversight Committee.

3.     ACTION BY REPRESENTATIVES OF THE OVERSIGHT COMMITTEE

3.1.     Chairperson.   The Chairperson shall preside at the meetings of the Oversight Committee.  Subject to the vote of the Oversight Committee, the Chairperson shall

4

have such powers and duties as are set forth in these By-Laws or as the Committee assigns to him.

3.2.    Emergency Motions.    Subject to Section 2.5, the Chairperson, with the advice of Counsel, or Counsel shall be empowered, without prior Oversight Committee action or consent, to consent to or otherwise act upon applications or motions for court orders on an emergency basis if the Chairperson, with the advice of Counsel, or Counsel determines that it is not feasible to obtain a vote of the Oversight Committee pursuant to these By-Laws.   The Chairperson and Counsel will make best efforts under the circumstances to communicate with as many Members of the Oversight Committee as possible before taking any such actions.   The Oversight Committee shall be advised of any court orders, motions or applications so acted upon by the Chairperson pursuant to this section promptly thereafter.

3.3.    Subcommittees.    The Oversight Committee may, with the advice of Counsel, form one or more subcommittees to serve at the Oversight Committee's pleasure, with such powers and duties as the voting Members of the Oversight Committee shall determine.

3.4.    Professionals' Actions.    The Oversight Committee's professionals shall act at the request of the Oversight Committee (or, when appropriate, a subcommittee) or the Chairperson, and shall perform the duties specified in their respective orders of retention, together with such implementing duties as are set forth in these By-Laws or as may be requested by the Chairperson, the Oversight Committee, or a subcommittee.

3.5.    Secretary.    There shall be no secretary for the Oversight Committee.   In lieu thereof, Counsel shall maintain minutes of the meetings which shall include a list of the Members Present and the Oversight Committee action with respect to any motion or resolution. The minutes shall be circulated to the Members for approval as soon as practicable.

4.    MISCELLANEOUS.

4.1.    Ex Officio Members.    There shall be no ex officio members of the Oversight Committee without the express approval of the Oversight Committee upon a vote of the majority of participating members voting on such issue.   Such ex officio members shall be subject to any and all restrictions contained in these By-Laws including, but not limited to, Section 4.2. Ex officio members shall not be permitted to vote on any matters.

4.2.    Confidentiality.    Each Member of the Committee is aware of the fiduciary duty to unsecured creditors of the Debtor and agree that it shall act in accordance with such duty in dealing with confidential information.   Except to the extent otherwise required by 11 U.S.C. § 1102:  (i) all information, documents and matters of whatever nature and kind disclosed to the Oversight Committee (unless such information becomes generally available to the Oversight Committee on a non-confidential basis); (ii) all information or documents generated by the Oversight Committee, the Liquidating Agent, or by any of the Oversight Committee's professionals, or by any Member or counsel to any Member for the Oversight Committee's use; and (iii) all communications between Members in their capacity as such, including information regarding specific positions taken by Members, and all matters discussed at Oversight Committee meetings and the minutes thereof (collectively, (i), (ii) and (iii) are referred to as

"Confidential Information"), are confidential and shall not be disclosed or revealed to third parties in any manner whatsoever, except that a Member may share any such Confidential Information with its attorneys and financial consultants, provided that the person or entity receiving such disclosure agrees to be and is bound by these rules of confidentiality.

With respect to any required disclosure of Confidential Information by a Member to a third party by order of a court of appropriate jurisdiction, such Member shall promptly advise Counsel of such disclosure or prospective disclosure and shall reasonably cooperate with Counsel's efforts to obtain a protective order or other appropriate remedy to protect the confidentiality of such information. With respect to any required disclosure of Confidential Information relating to the Debtor, the Member shall advise Counsel as promptly as reasonably possible prior to such disclosure, and Counsel shall immediately notify the Debtor and the Debtor's counsel so that the Debtor may seek a protective order or other appropriate remedy to protect the confidentiality of such information.

Upon the resignation or removal of a Member, such Member shall promptly return to counsel to the Liquidating Agent or destroy any non-public or confidential material (including copies thereof) received by the Member solely in its capacity and in the course of its tenure as a member of the Committee. Notwithstanding the resignation or removal of a member, such Member shall continue to be bound by the confidentiality provisions of these By-Laws.

Each Member hereby acknowledges that it may be receiving material, non-public information regarding the Debtor and (1) that the trading of claims or securities of the Debtor while in possession of such information may be subject to various federal and/or state laws; and (2) Section 6.5 of the Plan provides for a Record Date for claim transfers. No Member shall have the right to transfer its membership in the Oversight Committee.

4.3.   Causes for Removal From Oversight Committee.   Upon receiving a recommendation from the Liquidating Agent, a Member, or Counsel, the Oversight Committee may elect to remove a Member under the following circumstances:

(a)   For a breach of any of his/her fiduciary duties as a Member;

(b)   For a breach of Section 4.2 of these By-Laws;

(c)   For conduct that would warrant removal of a member of any committee by the United States Trustee or the court pursuant to 11 U.S.C. §§ 1102-1103.

A Member may be removed by the affirmative vote of not less than two-thirds of the Members entitled to vote on such matters.

4.4.   Media Communications.   No Member shall communicate directly with the public or the media as a representative of the Oversight Committee, unless the Oversight Committee has so authorized the communication to be made by majority vote. Nothing in these By-Laws shall preclude any Member from sharing public, non-confidential information concerning this bankruptcy case with other creditors.

4.5.    <u>Expenses</u>.  Reasonable and actual expenses of the Oversight Committee and of Members incurred in connection with Oversight Committee business may be submitted to the Liquidating Agent, with a copy to Counsel, in order to seek reimbursement from the estate pursuant to Section 5.2 of the Plan.  Unless approved in advance by the Chairperson, with the advice of Counsel, reasonable expenses shall not include the expenses of any person other than a designated representative of a Member, an alternate, or a person invited by the Oversight Committee or by the Chairperson to attend an Oversight Committee meeting or participate in an Oversight Committee-related function.  Requests for reimbursement shall be itemized and reasonably detailed, and shall include receipts where practicable.

4.6.    <u>Amendments</u>.  These By-Laws may be amended, repealed or adopted by the vote of a majority of the Members of the Oversight Committee entitled to vote.

4.7.    <u>Execution of These By-Laws</u>.  These By-Laws may be executed in any number of counterparts, each of which shall constitute an original, and all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to these By-Laws by telecopier or email shall be as effective as delivery of a manually-executed counterpart of a signature page of these By-Laws.

**IN WITNESS WHEREOF**, the undersigned Members have executed these By-Laws on this ____ day of _____, 2015.


_____
Michael Ferrucci
Watson-Marlow, Inc.


_____
Diana Precht
Vergent Products


_____
Dorothy David
AVX Corporation


_____
Chad Roberson
Honne Capital, LLC for itself and as representative
of Derek C. Cheung, holder of Claim No. 62

# EXHIBIT A

## BY-LAWS OF THE OVERSIGHT COMMITTEE

### *In re HEI, Inc.*
### Case No. 15-4009

| OVERSIGHT COMMITTEE MEMBER | REPRESENTATIVE(s) |
|---|---|
| Watson-Marlow, Inc. | Michael Ferrucci |
| Vergent Products | Diana Precht |
| AVX Corporation | Dorothy David |
| Honne Capital, LLC for itself and as representative of Derek C. Cheung, holder of Claim No. 62 | Chad Roberson |

## Exhibit 7.1

**Preserved Causes of Action; Avoidance Claims**

The causes of action, potential causes of action, defendants, and potential defendants listed on this exhibit are not exhaustive, but are reflective of current knowledge.  To the extent not specifically released under the Plan, the Debtor and Liquidating Agent reserve all rights to bring any causes of action against any defendant. These specifically include:

1. Causes of Action against any and all parties related to transfers of assets listed on sections 3(b), 3(c), and 10(a) of the Amended Statement of Financial Affairs filed in the Chapter 11 Case.

2. Any claim to recovery of any refunds.

3. Claims under insurance policies or against insurance contracts.

4. Claims for setoff or recoupment.

5. Claims for turnover of property of the Debtor's estate.

6. Collection of accounts receivable.

7. All Avoidance Claims, without limitation.

## Exhibit 8.1

### Additional Assumed Contracts and Leases[1]

| Counterparty | Agreement | Cure Amt. |
|---|---|---|
| Atlantic Specialty Insurance Company (a OneBeacon Company) | Workers Compensation Insurance | $0.00 |
| Atlantic Specialty Insurance Company (a OneBeacon Company) | Property, General Liability, Automobile, and Umbrella Insurance | $0.00 |
| Atlantic Specialty Insurance Company (a OneBeacon Company) | Two-Year Tail Coverage for Professional Liability/Data Liability Insurance Policy | $0.00 |
| Atlantic Specialty Insurance Company (a OneBeacon Company) | Two-Year Tail Coverage for Medical Products Insurance Policy | $0.00 |
| BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota | Service Agreement, as amended by Termination Agreement | $0.00 |
| CBRE, Inc. | Exclusive Sales Listing Agreement | $0.00 |
| GreatAmerican Insurance Group | Crime Protection Insurance | $0.00 |
| GreatAmerican Insurance Group | Employment Practices Liability Insurance | $0.00 |
| GreatAmerican Insurance Group | Directors, Officers, Insured Entity and Employment Practices Liability Insurance | $0.00 |
| GreatAmerican Insurance Group | Fiduciary Liability Insurance | $0.00 |
| Larson Records Management | Storage Agreement | $2,348.00 |
| Wellington Security Systems | Alarm System Sales and Services Agreement | $0.00 |

---

[1] As described in Section 8.1 of the Plan, all other executory contracts, unexpired leases, or other agreements that are neither Additional Assumed Agreements nor previously assumed or rejected during this case shall be deemed rejected as of the Effective Date.  The Debtor had certain agreements with Delta Dental, Guardian Life Insurance Company of America, Transamerica Corporation, and Willis of Minnesota Inc. (for, respectively, employee dental insurance, employee life and disability insurance, 401(k) plan administration, and insurance financing and brokerage services), under which the Debtor's obligations will have been completed, but the counterparties may still be making runoff payments or providing other services at the time of plan confirmation.  To the extent that the agreements with Delta Dental, Guardian Life Insurance Company of America, Transamerica Corporation, and Willis of Minnesota Inc. (and any other similar contract or agreement under which the counterparty continues to perform) are executory or have not yet expired by their own terms, rejection pursuant to Section 8.1 of the Plan is not intended to affect or terminate such runoff payments or other continuing payments or services that the counterparty is obligated to provide.